UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

JENNIFER HASEMANN and DEBBIE HOTH,
individually and on behalf of all others similarly
situated,

                        Plaintiffs,

            v.

GERBER PRODUCTS CO., d/b/a Nestlé Nutrition,
Nestlé Infant Nutrition or Nestlé Nutrition North
America,

                        Defendant.

**MEMORANDUM & ORDER**
15-CV-2995 (MKB)

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiffs Jennifer Hasemann and Debbie Hoth commenced the above-captioned putative

class action on behalf of themselves and all others similarly situated against Defendant Gerber

Products Co., doing business as Nestlé Nutrition, Nestlé Infant Nutrition or Nestlé Nutrition

North America. (Compl., Docket Entry No. 1.) Plaintiffs allege claims for (1) deceptive,

misleading and unfair practices in violation of the Florida Deceptive and Unfair Trade Practices

Act, Fla. Stat. § 501.201 *et seq.* (the "FDUTPA"); (2) misleading advertising in violation of

Florida Statutes § 817.41; (3) untrue, deceptive and misleading practices in violation of the

Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.01 *et seq.* (the "WDTPA");

and (4) false representations in violation of Wisconsin Statutes §§ 895.446 and 943.20. (*Id.*

at ¶¶ 82–127.) Plaintiffs seek actual, statutory and punitive damages, restitution and

disgorgement, and injunctive relief. (*Id.* at 29.) Defendant moves to dismiss or stay the action

pursuant to the primary jurisdiction doctrine, dismiss Plaintiffs' claims for injunctive relief

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and dismiss the Complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (Def. Mot. to Dismiss ("Def. Mot."), Docket Entry No. 23; Def. Mem. of Law in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 23-1; Def. Reply Mem. of Law in Further Supp. of Def. Mot. ("Def. Reply"), Docket Entry No. 25.)

For the reasons set forth below, the Court declines to dismiss or stay this matter pursuant to the primary jurisdiction doctrine and finds that Plaintiffs do not have standing to seek injunctive relief. The Court grants Defendant's motion to dismiss Plaintiffs' claim under Wisconsin Statutes § 100.18 and denies Defendant's motion to dismiss Plaintiffs' claims under the FDUTPA, Florida Statutes § 817.41, Wisconsin Statutes § 100.20 and Wisconsin Statutes §§ 895.446 and 943.20.

## I.  Background

The facts alleged in the Complaint are assumed to be true for purposes of this motion. Plaintiffs' claims arise from Defendant's advertising and marketing of its "Good Start" line of infant formula (the "Infant Formula"). Plaintiffs allege that Defendant's advertising and marketing misrepresent that the Infant Formula reduces the risk that infants will develop allergies, and also misrepresent that the Infant Formula is the first and only infant formula that the Food and Drug Administration (the "FDA") endorses to reduce the risk of infants developing allergies. (Compl. ¶¶ 2–3.)

### a.  Defendant's applications to FDA

Since at least 2011, Defendant has manufactured, distributed and sold the Infant Formula, and has advertised the Infant Formula through television, print media, product labeling and on the Internet. (*Id.* ¶ 19.) The Infant Formula contains partially hydrolyzed whey protein, which is the ingredient that is purportedly responsible for the Infant Formula's ability to reduce the risk of developing allergies. (*Id.* ¶ 20, 27.)

In June of 2005, Defendant petitioned the FDA for approval of a qualified health claim[1] to use in its marketing of the Infant Formula.  (*Id.* ¶ 27.)  Defendant sought approval to state that "emerging clinical research in healthy infants with family history of allergy shows that feeding a 100% Whey-Protein Partially Hydrolyzed formula may reduce the risk of common food allergy symptoms, particularly allergic skin rash."  (*Id.*)  The FDA denied Defendant's petition on May 11, 2006, concluding that there was "no credible evidence to support the qualified health claim relating consumption of 100 percent partially hydrolyzed whey protein in infant formula to a reduced risk of food allergy."  (*Id.* ¶ 28.)

In May of 2009, Defendant again petitioned the FDA to approve a qualified health claim, stating:

> emerging clinical research shows that, in healthy infants with family history of allergy, feeding a 100% Whey-Protein Partially Hydrolyzed infant formula instead of a formula containing intact cow's milk proteins may reduce the risk of developing the most common allergic disease of infancy — atopic dermatitis — throughout the 1st year of life and up to 3 years of age.

(*Id.* ¶ 29.)  The FDA determined that this claim mischaracterized the scientific evidence and was

---

[1] The FDA can approve a "health claim" or a "qualified health claim" under certain circumstances, allowing companies to make certain health claims about their products in the labeling of said products.  A "health claim" is "any claim made on the label or in labeling of a food . . . that expressly or by implication . . . characterizes the relationship of any substance to a disease or health-related condition."  (Compl. ¶ 23 (quoting 21 C.F.R. § 101.14(a)(1)).  Before use in labeling a product, the FDA requires any such health claim to be reviewed and approved by the FDA.  (*Id.* ¶ 26.)  The FDA can approve a health claim if it determines that there is "significant scientific agreement" that the claim is supported by scientific evidence.  (*Id.* ¶ 24.)  "In the absence of 'significant scientific agreement' [as to a health] claim, the FDA may nevertheless allow a company to make a 'qualified health claim' if it is supported by less scientific evidence."  (*Id.* ¶ 25.)  When the FDA permits a company to make a qualified health claim, the FDA issues "a letter outlining the circumstances under which it intends to consider exercising its enforcement discretion not to challenge the qualified health claim."  (Def. Mem. 4); *see generally Fleminger, Inc. v. U.S. Dep't of Health & Human Servs.*, 854 F. Supp. 2d 192, 200 (D. Conn. 2012) (explaining the FDA's process for analyzing and approving qualified and unqualified health claims).

therefore misleading.  (*Id.* ¶ 30.)  The FDA instead proposed four alternative qualified health claims, over which it would consider exercising its enforcement discretion not to challenge the qualified health claim.[2]  (*Id.* ¶ 32.)  The FDA required that, if Defendant opted to use any of the four qualified health claims, Defendant also add a qualifying statement to its labeling.  (*Id.* ¶ 33.) The qualifying statement specified that:

---

[2]  The four alternative qualified health claims proposed by the FDA are:

1. "Very little scientific evidence suggests that, for healthy infants who are not exclusively breastfed and who have a family history of allergy, feeding a 100% Whey-Protein Partially Hydrolyzed infant formula from birth up to 4 months of age instead of a formula containing intact cow's milk proteins may reduce the risk of developing atopic dermatitis throughout the 1st year of life and up to 3 years of age."

2. "Little scientific evidence suggests that, for healthy infants who are not exclusively breastfed and who have a family history of allergy, feeding a 100% Whey-Protein Partially Hydrolyzed infant formula from birth up to 4 months of age instead of a formula containing intact cow's milk proteins may reduce the risk of developing atopic dermatitis throughout the 1st year of life."

3. "For healthy infants who are not exclusively breastfed and who have a family history of allergy, feeding a 100% Whey-Protein Partially Hydrolyzed infant formula from birth up to 4 months of age instead of a formula containing intact cow's milk proteins may reduce the risk of developing atopic dermatitis throughout the 1st year of life and up to 3 years of age. FDA has concluded that the relationship between 100% Whey-Protein Partially Hydrolyzed infant formulas and the reduced risk of atopic dermatitis is uncertain, because there is very little scientific evidence for the relationship."

4. "For healthy infants who are not exclusively breastfed and who have a family history of allergy, feeding a 100% Whey-Protein Partially Hydrolyzed infant formula from birth up to 4 months of age instead of a formula containing intact cow's milk proteins may reduce the risk of developing atopic dermatitis throughout the 1st year of life. FDA has concluded that the relationship between 100% Whey-Protein Partially Hydrolyzed infant formulas and the reduced risk of atopic dermatitis is uncertain, because there is little scientific evidence for the relationship."

(Compl. ¶ 32.)

> Partially hydrolyzed formulas should not be fed to infants who are allergic to milk or to infants with existing milk allergy symptoms. If you suspect your baby is already allergic to milk, or if your baby is on a special formula for the treatment of allergy, your baby's care and feeding choices should be under a doctor's supervision.

(*Id.* (the "qualifying statement") (emphasis omitted).)

### b. The representations

Plaintiffs allege that, "since at least 2011," Defendant has marketed and advertised the Infant Formula using false and misleading representations. (*Id.* ¶ 42.) Plaintiffs allege six examples of the allegedly false and misleading representations: a statement on the seal of the Infant Formula that it is the "1st & only routine formula to reduce the risk of developing allergies," (*id.* ¶ 43 (capitalization omitted); Ex. A, annexed to Compl.); a statement on the label of the Infant Formula that it is "the first and only formula brand made from 100% whey protein hydrolyzed, and that meets the criteria for a FDA Qualified Health Claim for atopic dermatitis," (Compl. ¶ 44, 47; Ex. B, annexed to Compl.); a television commercial stating in relevant part: "You want your Gerber baby to have your imagination . . . your smile . . . your eyes . . . not your allergies. . . . [I]f you introduce formula, choose the Gerber Good Start Comfort Proteins Advantage," (Compl. ¶ 48 (alterations in original); Ex. C, annexed to Compl.); a print advertisement stating:

> The Gerber Generation says "I love Mommy's eyes, not her allergies."
>
> If you have allergies in your family, breastfeeding your baby can help reduce their risk. And, if you decide to introduce formula, research shows the formula you first provide your baby may make a difference. In the case of Gerber® Good Start® Gentle Formula, it's the Comfort Proteins® Advantage that is easy to digest and may also deliver protective benefits.

(Compl. ¶ 49; Ex. D, annexed to Compl.); and two additional print advertisements stating that it is the "the first and only infant formula that meets the criteria for a FDA Qualified Health Claim." (Compl. ¶¶ 50–51; Ex. E, annexed to Compl.; Ex. F, annexed to Compl.)

According to Plaintiffs, these representations can be categorized as making two deceptive representations: (1) that the Infant Formula reduces the risk that infants will develop allergies, and (2) that the Infant Formula meets the criteria for an FDA qualified health claim for atopic dermatitis. As to the representation that the Infant Formula "reduce[s] the risk of [infants] developing allergies," Plaintiffs allege that it is false because the FDA rejected this claim in May 2006, and the scientific evidence demonstrates that this claim is false. (Compl. ¶¶ 43, 48–49, 53.) In support of this argument, Plaintiffs allege that several scientific studies have concluded that partially hydrolyzed whey protein does not lower the risk that infants will develop allergies. (*Id.* ¶ 34.) Plaintiffs cite to a June of 2011 study by Adrian Lowe, Ph.D., University of Melbourne and Melbourne Royal Children's Hospital, which concluded that "[t]here was no evidence that introducing pHWF [(partially hydrolyzed whey formula)] at the cessation of breast-feeding reduced the risk of allergic manifestations, including eczema, asthma, and allergic rhinitis, in [a] study of high-risk infants." (*Id.* ¶ 35 (alterations in original) (quoting Adrian J. Lowe, *Effect of a Partially Hydrolyzed Whey Infant Formula at Weaning on Risk of Allergic Disease in High-Risk Children: A Randomized Controlled Trial*, 128 J. Allergy & Clinical Immunology 2, 360–65.e4 (2011)).)

As to the representation that the Infant Formula meets the criteria for an FDA qualified health claim for atopic dermatitis, Plaintiffs allege that this representation is deceptive because it not one of the four qualified health claims that the FDA approved and, in addition, because

Defendant did not include the qualifying statement as required by the FDA. (*Id.* ¶¶ 44, 50–51, 53.)

### c. FDA warning letter

On October 31, 2014, the FDA sent a warning letter to Defendant's President and CEO "outlining various false and misleading representations made in the promotion of [the Infant Formula]" (the "FDA Warning Letter"). (*Id.* ¶ 56.) After reviewing the labeling on the Infant Formula that was sold as a 23.2 ounce milk-based powder, the FDA concluded that the labeling on the Infant Formula bore "health claims that were not authorized by FDA" and that "the labeling [was] misleading."[3] (FDA Warning Letter 1, annexed to Decl. of Geoffrey Castello, Docket Entry No. 23-2, as Ex. 4.) The FDA also noted that it had "previously considered and denied" the statement on the label of the Infant Formula that it was the "1st & only routine formula to reduce risk of developing allergies." (*Id.* at 2 (capitalization omitted).) The FDA acknowledged that consistent with the FDA's four proposed qualified health claims, Defendant's labeling and website both stated that there was "limited evidence" that partially hydrolyzed whey protein can reduce the risk of infants developing atopic dermatitis, (*id.* at 2–3), but nevertheless concluded that by failing to include the qualifying statement required by the FDA, Defendant

---

[3]  Because the Complaint cites to and quotes extensively from the FDA Warning Letter, (*see* Compl. ¶¶ 56–58), the Court finds that it is incorporated by reference into the Complaint. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010) (noting that because the plaintiff referred in the complaint to certain e-mails, "the District Court could deem them incorporated in the complaint and therefore subject to consideration" on a 12(b)(6) motion); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) ("To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003))) The Court also finds that because Plaintiffs repeatedly rely on the FDA Letter in alleging their claims, the letter is integral to the Complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))).

failed to provide "essential information necessary to ensure the safety of consumers," (*id.* at 3–4.)  Because Defendant failed to include the qualifying statement on its website or on the labeling of the Infant Formula, the FDA concluded that Defendant's qualified health claim was misleading.  (*Id.*)

### d.  Litigation involving Defendant

On October 29, 2014, the Federal Trade Commission (the "FTC") filed a lawsuit against Defendant in the United States District Court for the District of New Jersey, alleging that the Product's labeling and advertising are false and deceptive (the "FTC Litigation").  (*Id.* ¶ 54.); *Fed. Trade Comm'n v. Gerber Prods. Co.*, No. 14-CV-6771 (D.N.J. Oct. 29, 2014).  The FTC alleges that Defendant's representation that the Infant Formula reduces the risk of developing allergies is false or misleading and unsubstantiated.  (Compl. ¶ 55); *Fed. Trade Comm'n v. Gerber*, complaint at ¶¶ 19–20.  The FTC also alleges that Defendant's representation on the labeling and in its advertising that the Infant Formula qualified for or received approval for a health claim from the FDA is false or misleading.[4]  (Compl. ¶ 55); *Fed. Trade Comm'n v. Gerber*, complaint at ¶¶ 22–23.

Since the FTC filed its action against Defendant, three other cases regarding the Infant Formula have been filed against Defendant.  (Pls. Mem. of Law in Opp'n to Def. Mot. ("Pls. Opp'n") 5–6, Docket Entry No. 24; Def. Mem. 1); *see also Greene v. Gerber Prods. Co.*, No. 16-CV-1153 (E.D.N.Y filed Mar. 8, 2016); *Zakaria v. Gerber Prods. Co.*, No. 15-CV-200, 2015 WL 3827654 (C.D. Cal. June 18, 2015); *Nat'l Consumers League v. Gerber Prods. Co.*, No. 14-CA-8202 (D.C. Super. Ct. Aug. 8, 2015).  In all three cases the plaintiffs allege that Defendant's representations that the Infant Formula reduces the risk of developing allergies and

---

[4] The parties are currently in mediation.

their representations that the FDA approved Defendant's health claims are respectively false and misleading. *See Greene*, No. 16-CV-1153, complaint at ¶¶ 53–65; *Zakaria*, 2015 WL 3827654, at *1; *Nat'l Consumers League*, slip op. at 3.[5]

### e. Plaintiffs' purchases

Plaintiffs allege that they reviewed the representations on the label of the Infant Formula and on Defendant's website stating that the Infant Formula reduces the risk that infants will develop allergies and that the FDA has endorsed Defendant's qualified health claim. (Compl. ¶¶ 60–61, 63–64.) Based on these representations, Plaintiffs purchased the Infant Formula in 12-ounce and 23-ounce containers, for prices ranging between $16–$17 and $25–$26, respectively. (*Id.* ¶¶ 62, 65–66.) According to Plaintiffs, Defendant "inflated" the price of the Infant Formula based on its false and misleading representations. (*Id.* ¶ 67.) Plaintiffs assert that they would not have paid "these inflated prices" had they known that the Infant Formula does not reduce the risk that infants will develop allergies or that the FDA did not endorse Defendant's qualified health claim. (*Id.*)

## II. Discussion

### a. Standard of review

#### i. Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*,

---

[5] The courts in both *Zakaria* and *Nat'l Consumers League* denied Defendant's motions to dismiss the complaints in those actions. *See Zakaria*, 2015 WL 3827654, at *2; *Nat'l Consumers League*, slip op. at 1. In *Greene*, which is before the Court, the parties are currently briefing a motion to dismiss the action.

718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).  The plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether the plaintiff has met that burden, "'[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010).  A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists.  *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

### ii.    Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013).  Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### b. Primary jurisdiction doctrine

Defendant seeks to either dismiss or stay the action pending resolution of the FTC Litigation, pursuant to the primary jurisdiction doctrine.[6] (Def. Mem. 19–23.) Defendant argues that the FDA has promulgated "a complex and comprehensive regulatory scheme governing" food labeling and "is in a far better position" to determine whether Defendant's representations regarding the Infant Formula are "improper." (*Id.* at 19–21.) Defendant also argues that the Court should stay this action to ensure that Defendant is not subject to conflicting judgments as a result of the FTC litigation. (*Id.* at 22–23.)

Plaintiffs contend that the primary jurisdiction doctrine is "inapplicable" to this action for two reasons. (Pls. Opp'n 20–23.) Plaintiffs argue that the Court is "well-equipped to handle" the determination of whether Defendant deceptively marketed and advertised the Infant Formula without implicating the technical expertise of the FDA. (*Id.* at 21–22.) Plaintiffs secondarily argue that because the FTC is not conducting an administrative investigation or proceeding but is instead suing Defendant in federal court, the primary jurisdiction doctrine does not counsel staying this matter pending resolution of the FTC Litigation. (*Id.* at 23.)

"The doctrine of primary jurisdiction allows a federal court to refer issues extending beyond the conventional expertise of judges or falling within the realm of administrative discretion to the appropriate administrative agency for resolution in the first instance." *Fed. Trade Comm'n v. Verity Int'l, Ltd.*, 443 F.3d 48, 60 (2d Cir. 2006) (citation and internal

---

[6] On October 9, 2015, Defendant requested that the Court stay the instant action pending the outcome of a court-ordered mediation in the FTC Litigation. (Docket Entry No. 15.) By Order dated October 23, 2015, the Court denied Defendant's request. (Order dated Oct. 23, 2015.)

quotation marks omitted); *see also Schaghticoke Tribal Nation v. Kent Sch. Corp. Inc.*, 595 F. App'x 32, 34 (2d Cir. 2014) ("The primary jurisdiction doctrine is '[a] judicial doctrine whereby a court tends to favor allowing an agency an initial opportunity to decide an issue in a case in which the court and the agency have concurrent jurisdiction.'" (alteration in original) (quoting *Black's Law Dictionary* 1310 (9th ed. 2009))); *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 135–36 (2d Cir. 2010) ("The doctrine of primary jurisdiction applies 'to claims properly cognizable in court that contain some issue within the special competence of an administrative agency.'" (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993))).  The doctrine "is concerned with 'promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties,'" and its "central aim is to allocate initial decisionmaking responsibility between courts and agencies and to ensure that they 'do not work at cross-purposes.'" *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (first quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956); and then quoting *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir. 1996)).  "The scope of the doctrine is 'relatively narrow,'" and "[c]ourts have not generally applied the primary jurisdiction doctrine where the issue is 'legal in nature and lies within the traditional realm of judicial competence.'" *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 75 (E.D.N.Y. 2015) (quoting *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988)) ("*Belfiore I*").

There is "[n]o fixed formula" for applying the doctrine.  *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006) (alteration in original) (quoting *W. Pac. R.R.*, 352 U.S. at 64).  However, the Second Circuit generally considers four factors in determining whether the doctrine should be applied:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy

considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Id.* (quoting *Ellis*, 443 F.3d at 82–83); *see also Schaghticoke*, 595 F. App'x at 34 ("The doctrine is applicable where 'a claim is originally cognizable in the courts, but enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body.'" (quoting *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58–59 (2d Cir. 1994))). The Court considers each factor below.

### i. Technical expertise of agency versus conventional experience of judges

Plaintiffs' false advertising claims do not involve technical considerations within the particular expertise of either the FDA or the FTC. The claims require a determination of whether a reasonable consumer would be deceived by the Infant Formula, an issue that is within the conventional experience of judges.[7] *See Belfiore I*, 311 F.R.D. at 75 ("Generally, the judiciary is 'well-suited' to determine a consumer's reasonable expectations about labeling." (citations omitted)); *Silva*, 2015 WL 5360022, at *8 ("[A]ssessing whether a label is false or deceptive is well within the traditional realm of the court's competence and does not necessitate deferring to an agency's technical expertise." (citing *Goya Foods*, 846 F.2d at 851)); *Frito-Lay*, 2013 WL 4647512, at *8 ("'This case is far less about science than it is about whether a label is misleading,' and the reasonable-consumer inquiry upon which some of the claims in this case depends is one to which courts are eminently well suited, even well versed." (quoting *Jones v.*

---

[7] This conclusion is supported here by the fact that the FTC has filed suit in federal district court seeking a judicial determination as to whether the labeling and advertising of the Infant Formula are false and deceptive.

*ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012))); *Ackerman*, 2010 WL 2925955, at *14 ("The question whether defendants have violated FDA regulations and marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine." (citing *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009))).

### ii. Jurisdiction of the FDA

It is undisputed that the FDA has discretion to regulate the Infant Formula. *See Goldemberg*, 8 F. Supp. 3d at 477 (noting that it is "within the FDA's discretion to determine whether a label is misleading" (internal quotation marks omitted) (citing 21 U.S.C. § 362(a)).

### iii. Risk of inconsistent ruling

Defendant argues that the various civil actions regarding the Infant Formula create the possibility of inconsistent rulings. While Defendant is correct that different judges may rule differently, the Court understands this factor to be concerned with inconsistent rulings between courts and agencies, not between different courts. *See Ellis*, 443 F.3d at 87–88 (stating that this factor weighs in favor of applying the doctrine where there was a pending application before the agency"); *Elkind*, 2015 WL 2344134, at *10 (stating that the third factor did not concern inconsistencies between courts, but "[i]nstead, the danger of inconsistency on which the [c]ourt focuses" is whether the court's opinion will conflict with the agency's decision). Because the FDA has concluded its administrative investigation, (Def. Mem. 21), there is no risk of inconsistent rulings between the FDA and the Court. *See Goldemberg v. Johnson & Johnson Consumer Cos, Inc.*, 8 F. Supp. 3d 467, 477 ("[A]s the [FDA] is *not* simultaneously contemplating the same issue, *contra Ellis*, 443 F.3d at 88, this factor weighs against applying the primary jurisdiction doctrine, especially considering that decisions from various district and appellate courts regularly conflict.").

#### iv.    Prior applications to the FDA and the FTC

Neither party has made an application to the FTC, nor have Plaintiffs made an application

to the FDA.  Defendant's application to the FDA for approval of its qualified health claim was

rejected by the FDA.  (Compl. ¶¶ 27–33.)  Because the FDA has concluded its investigation and

no other application has been filed with the FDA or the FTC, this factor weighs against applying

the doctrine.  *See Schiller*, 449 F.3d at 295 (noting that the fact that the party bringing the action

had not made a prior application to the agency weighs against applying the doctrine);

*Goldemberg*, 8 F. Supp. 3d at 477–78 (finding that the fourth factor weighed against applying the

doctrine where the FDA had considered the issue and concluded its investigation, and the

plaintiffs had not made an application to the FDA).

In weighing these four factors, only the fact that the FDA has discretion to regulate the

Infant Formula weighs in favor of applying the primary jurisdiction doctrine, and this factor

alone is insufficient to support such an outcome.  *See Elkind*, 2015 WL 2344134, at *10

(declining to apply the doctrine despite the FDA's discretion because the other factors weighed

against applying the doctrine); *see also Reid*, 2016 WL 403497, at *12 (same).

Defendant relies on *Belfiore I*, where the court applied the primary jurisdiction doctrine

to stay the litigation pending the outcome of an agency action, to support its argument that the

Court should apply the doctrine here pending the resolution of the FTC Litigation.  (Def. Mem.

22–23 (citing *Belfiore I*, 311 F.R.D. 29).)  In *Belfiore I*, the plaintiffs alleged that they were

deceived into paying a premium for "'flushable' wipes," because the wipes, which were meant to

be used instead of toilet paper, were not actually flushable.  *Belfiore I*, 311 F.R.D. at 38.  In

staying the action pursuant to the primary jurisdiction doctrine, the court in *Belfiore I* noted that

the FTC was "engaged in an ongoing inquiry" into the defendant's use of the term "flushable"

and had entered into a consent agreement with one of the defendant's competitors that would

limit the competitor's use of the same term. *Id.* The court acknowledged that whether a reasonable consumer could be deceived by the label at issue was "within the conventional experience of judges, who often hear cases involving the labeling of consumer goods," but held that because the FTC was "already expending resources to determine" whether the labeling was deceptive, and because a determination that the labeling was not deceptive would provide a complete defense to the plaintiffs' action, applying the primary jurisdiction doctrine was warranted. *Id.* at 78–79.

Here, the FTC is neither conducting an investigation into the Infant Formula nor negotiating a consent agreement as to the propriety of Defendant's conduct. Instead, the FTC sued Defendant in federal court, indicating agreement with the conclusion that this determination is within the "the conventional experience of judges." *See id.* at 78 (noting that whether a reasonable consumer would be deceived by a product label is "within the conventional experience of judges, who often hear cases involving the labeling of consumer goods"). While the multiple litigations may result in inconsistent decisions, as noted above, the risk of inconsistent rulings between federal courts is not a basis for applying the doctrine. *See Ellis*, 443 F.3d at 87–88; *Elkind*, 2015 WL 2344134, at *10; *see also Goldemberg*, 8 F. Supp. 3d at 477 (noting that "decisions from various district and appellate courts regularly conflict" and that this concern did not warrant applying the doctrine). Moreover, unlike in *Belfiore I*, a favorable determination in the FTC Litigation will not provide a complete defense to this action. The Court therefore denies Defendant's motion to stay or dismiss this action pursuant to the primary jurisdiction doctrine.[8]

---

[8] In *In re KIND LLC "Healthy & All Natural" Litig.*, --- F. Supp. 3d ---, ---, 2016 WL 4991471 (S.D.N.Y. Sept. 15, 2016), where the plaintiffs challenged the defendant's use of "All

### c. Standing to seek injunctive relief

Defendant contends that Plaintiffs lack standing to seek injunctive relief because they fail to allege a likelihood of continuing or future injury. (Defs. Mem. 24.) Defendant argues that having alleged that the representations made by Defendant are deceptive, Plaintiffs will not purchase the Infant Formula in the future and therefore cannot show that they will likely be injured in the future. (*Id.*) Plaintiffs seek to enjoin Defendant's "wrongful acts and practices," (Compl. ¶¶ 96, 98, 107, 118), and contend that, regardless of whether they will purchase the Infant Formula in the future, they have standing to seek injunctive relief because Defendant's objectionable behavior is ongoing. (Pls. Opp'n 24.) Plaintiffs argue that denying them standing to seek injunctive relief "simply because some people are no longer fooled by" Defendant's representations "would frustrate the intent of the consumer-protection statutes." (*Id.*)

When seeking injunctive relief, "a plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "[T]o meet the constitutional minimum of standing" for injunctive relief, a plaintiff "must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *Lyons*, 461 U.S. at 101–102); *see also Nicosia v. Amazon.com, Inc.*, --- F.3d ---, ---, 2016 WL 4473225, at *12 (2d Cir. Aug. 25, 2016) ("Plaintiffs lack standing to pursue

Natural," the court invoked the primary jurisdiction doctrine to stay the litigation. *Id.* at *3. The court found that a stay was appropriate because the FDA was already in the process of regulating the use of "All Natural" on product labels. *Id.* at *3–4. The court noted that in November of 2015, the FDA issued a request for comments regarding the use of "All Natural" and that "the FDA has already completed its notice and comment period and seems determined to address the 'all natural' labeling issue." *Id.* at *6. The court therefore concluded that staying the action pending the resolution of the FDA's rulemaking process would not "needlessly delay[]" the action and would provide guidance as to whether the defendant's label was misleading. *Id.*

injunctive relief where they are unable to establish a 'real or immediate threat' of injury." (first citing *Lyons*, 461 U.S. at 111–12; and then citing *Shain*, 356 F.3d at 215–16)); *Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) ("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm."). The alleged injury "must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. ---, ---, 134 S. Ct. 2334, 2341 (2014)); *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) ("The Supreme Court has 'repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are not sufficient.'" (alteration in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. ---, ---, 133 S. Ct. 1138, 1147 (2013))).

A plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." *Shain*, 356 F.3d at 215; *see also Nicosia*, --- F.3d at ---, 2016 WL 4473225, at *12 (stating that past injuries do not confer standing to seek injunctive relief); *Pungitore*, 506 F. App'x at 42 (stating that, while past wrongs may be "evidence bearing on whether there is a real and immediate threat of repeated injury,' such evidence 'does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects'" (quoting *Lyons,* 461 U.S. at 102)). "In establishing a certainly impending future injury, . . . the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (collecting cases). "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must

the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003)

(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

The Second Circuit has not directly addressed whether plaintiffs alleging claims of false

or misleading advertising have standing to seek injunctive relief where the challenged action is

still ongoing.[9]  *See Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 444 (E.D.N.Y. 2015)

("The Court of Appeals for the Second Circuit has apparently not yet directly addressed the issue

of whether a plaintiff, with no claim of probable future injury, may pursue an injunction under

state consumer protection statutes.") ("*Belfiore II*").  Nevertheless, some district courts in the

Second Circuit have concluded that consumer plaintiffs asserting deceptive advertising claims do

not have standing to seek injunctive relief because of insufficient allegations of future injury.[10]

---

[9]  The Second Circuit recently held that a plaintiff alleging false or misleading advertising claims lacks standing to seek injunctive relief where the defendant no longer sold the challenged product.  *Nicosia v. Amazon.com, Inc.*, --- F.3d ---, ---, 2016 WL 4473225, at *12 (2d Cir. Aug. 25, 2016).  Plaintiffs have not alleged that Defendant no longer sells the Infant Formula.

[10]  Other district courts in the Second Circuit have held otherwise and "have declined to follow *Lyons* in consumer protection cases."  *Nicosia*, 84 F. Supp. 3d at 157; *see Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (holding that the plaintiff had standing to seek injunctive relief even though the plaintiff alleged that he would not purchase the deceptive product again); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014) (same); *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (same).  Some of these courts have determined that, because a consumer cannot seek to enjoin deceptive conduct until they become aware of the conduct by suffering an injury, a decision that a consumer does not have standing to seek injunctive relief would effectively bar consumers from ever being able to seek injunctions in false advertising cases.  *See Belfiore II*, 94 F. Supp. 3d at 445 (holding that the plaintiffs had standing to seek injunctive relief based on their false advertising claims "because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief'" (quoting *Ackerman*, 2013 WL 7044866, at *15 n.23)); *Ackerman*, 2013 WL 7044866, at *15 (noting that if standing for injunctive relief were denied because a plaintiff had become aware of an allegedly deception, then "injunctive relief would never be available in false advertising cases, a wholly unrealistic result" (citation omitted)).  These courts have also held that, because the plaintiffs are still exposed to the allegedly deceptive statements, their injury is ongoing.  *See Delgado*, 2014 WL 4773991, at *14 (finding that the plaintiffs had standing to seek injunctive relief because the plaintiffs would be "expos[ed]" to the allegedly ongoing and

*See Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 417–18 (S.D.N.Y. 2015) (holding that the plaintiffs, who did not allege they would purchase the deceptive product in the future, did not have standing to seek injunctive relief); *In re Avon Anti-Aging Skincare Creams & Products Mktg. & Sales Practices Litig.*, No. 13-CV-150, 2015 WL 5730022, at *8 (S.D.N.Y. Sept. 30, 2015) (finding that because the plaintiffs failed to allege a risk of future harm, "they lack[ed] standing to seek a forward-looking injunction"), *appeal withdrawn* (Nov. 10, 2015); *Elkind v. Revlon Consumer Products Corp.*, No. 14-CV-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015) (holding that the plaintiffs did not have standing to seek injunctive relief because they were "aware of the alleged misrepresentations that they challenge[d], so there [wa]s no danger that they will again be deceived by them"); *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (holding that the plaintiffs did not have standing to seek injunctive relief because the plaintiffs alleged that the products at issue had been deceptively advertised and that they would not have bought the products "absent the allegedly misleading advertisements").  These courts have held that because the plaintiffs were aware of the deceptive advertising and were unlikely to be deceived in the future, the plaintiffs failed to allege a risk of future harm.  *See Albert*, 151 F. Supp. 3d at 417 ("Plaintiffs have not alleged that they will purchase [the deceptive products] in the future. . . .  Since Plaintiffs have not alleged any future injury, they do not have standing to seek injunctive relief on behalf of themselves or a class."); *Avon*, 2015 WL 5730022, at *8 (explaining that because "[e]ach [p]laintiff states that, if she had been aware of the alleged truth about Avon's products, she would not have bought class

---

misleading statements in the future); *Ackerman*, 2013 WL 7044866, at *15 n.23 ("Plaintiffs seek to be relieved from defendants' misleading and deceptive practices in the future, and the fact that they discovered the alleged deception years ago does not render defendants' advertising or labeling any more accurate or truthful.  This is the harm New York's and California's consumer protection statutes are designed to redress.").

products," and therefore failed to allege a risk of future harm, "they lack[ed] standing to seek a forward-looking injunction"); *Elkind*, 2015 WL 2344134, at *3 ("Plaintiffs are now aware of the alleged misrepresentations . . . , so there is no danger that they will again be deceived by them.").[11]

Despite the absence of Supreme Court or Second Circuit law applying this standard to consumer plaintiffs seeking injunctive relief, the requirement that a plaintiff allege a risk of future injury in order to obtain injunctive relief is a constitutional requirement that all plaintiffs must satisfy. *See Lyons*, 461 U.S. at 102 (stating that in order to "satisfy the threshold requirement imposed by Article III" a plaintiff seeking injunctive relief must demonstrate a likelihood of future injury); *Nicosia*, --- F.3d at ---, 2016 WL 4473225, at *12 (noting that "Article III limits federal judicial power" and that plaintiffs "lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." (first quoting *Lyons*, 461 U.S. at 111–12; and then citing *Shain*, 356 F.3d at 215–16)); *Shain*, 356 F.3d at 215 (noting that "[i]n order to meet the constitutional minimum of standing to seek injunctive relief," a plaintiff must "show a likelihood that he will be injured in the future" (alteration and internal quotation marks omitted) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998))); *Albert*, 151 F. Supp. 3d at 418 (declining to follow *Ackerman* because "binding

---

[11] Where the named plaintiffs do not have standing to seek an injunction, the putative class also lacks standing to seek injunctive relief. *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 417 (S.D.N.Y. 2015) (noting that "the named plaintiffs must have standing in order to seek injunctive relief on behalf of the class" (citing *Dodge v. Cty. of Orange*, 103 F. App'x. 688, 690 (2d Cir. 2004))); *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 158 (E.D.N.Y. 2015) (holding that the named plaintiff lacked standing to pursue injunctive relief on behalf of a putative class because the named plaintiff "must personally have standing to secure prospective relief on behalf of a class" and the named plaintiff lacked personal standing (collecting cases)), *aff'd in relevant part, vacated on other grounds*, --- F. 3d ---, ---, 2016 WL 4473225 (2d Cir. Aug. 25, 2016).

Supreme Court and Second Circuit precedent" requires that in order "[f]or a plaintiff to have individual standing to seek injunctive relief, he or she must demonstrate a likelihood of future injury" (first citing *Lyons*, 461 U.S. at 102; and then citing *Shain*, 356 F.3d at 215)).

Here, Plaintiffs cannot show future injury. Plaintiffs allege that they were injured in the past when they purchased the Infant Formula based on Defendant's alleged misrepresentations, (Compl. ¶¶ 67–68), but have not alleged that they continue to purchase the Infant Formula or that they will purchase the Infant Formula in the future. Plaintiffs cannot rely on past injury, and these allegations are insufficient to establish the likelihood of future injury to confer standing. *See Tomasino*, 44 F. Supp. 3d at 256 ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974))).

Plaintiffs' allegation that Defendant's conduct is ongoing is also insufficient to establish a likelihood of future injury because there are no allegations that Defendant's allegedly deceptive representations will deceive Plaintiffs into purchasing the Infant Formula.[12] *See Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 688 (S.D. Fla. 2014) (finding that only consumers who purchased the defendant's cooking oil as a result of the allegedly deceptive label could state a claim for deceptive advertising); *Wyatt v. Philip Morris USA, Inc.*, No. 09-CV-0597, 2013 WL 4046334, at *4 (E.D. Wis. Aug. 8, 2013) (finding that only consumers who purchased the defendant's cigarettes as a result of the allegedly deceptive marketing could state a claim for deceptive advertising).

---

[12] Although in *Nicosia* the Second Circuit found that the plaintiff failed to establish a likelihood of future injury and therefore lacked standing to seek injunctive relief because the defendant was no longer selling the deceptive product, the court did not consider whether the plaintiff could have established a likelihood of future injury if the defendant had continued to sell the product at issue. *See Nicosia*, --- F.3d at ---, 2016 WL 4473225, at *12.

Plaintiffs have failed to allege a risk of future injury and therefore lack standing to seek injunctive relief.

### d.  WDTPA claims

Plaintiffs allege violations of the WDTPA pursuant to Wisconsin Statutes §§ 100.18 and 100.20.  (Compl. ¶¶ 108–18; Pls. Opp'n 17–18.)  Defendant moves to dismiss both claims, asserting that section 100.18 does not apply to representations about food products and that Plaintiffs have not stated a claim as to section 100.20.  (Def. Mem. 16–17; Def. Reply 7.)  The Court discusses each claim below.

### i.  Section 100.18 claim

Defendant contends that Plaintiffs cannot bring a claim under Wisconsin Statutes § 100.18 because section 100.18 does not apply to representations "relating to food products." (Def. Mem. 16–17 (citing *Gallego v. Wal-Mart Stores, Inc.*, 707 N.W.2d 539, 544–46 (Wis. Ct. App. 2005)).)  Defendant argues that false advertising claims about food items are instead governed by Wisconsin Statutes § 100.183, which does not allow a private right of action.  (*Id.* at 17.)  Plaintiffs argue that they can bring a section 100.18 claim and that the only decision stating otherwise, *Gallego*, was wrongly decided because it inappropriately relied on the legislative history of the statute.  (Pls. Opp'n 17–18)

Wisconsin Statutes § 100.18 "generally prohibits false, deceptive, or misleading representations or statements of fact in public advertisements or sales announcements." *Mueller v. Harry Kaufmann Motorcars, Inc.*, 859 N.W.2d 451, 457 (Wis. Ct. App. 2014) (internal quotation marks omitted) (quoting *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 244 (Wis. 2004)), *review denied sub nom. Mueller v. Harry Kaufmann Motorcars*, 862 N.W.2d 899 (Wis. 2015).  To state a section 100.18 claim, a plaintiff must allege that "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) that the representation

was untrue, deceptive or misleading, and (3) that the representation caused the plaintiff a pecuniary loss." *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014) (internal quotation marks omitted) (quoting *Novell v. Migliaccio*, 749 N.W.2d 544, 552 (Wis. 2008)).

Wisconsin's highest court has not directly addressed whether section 100.18 applies to representations about the sale of food, but the Wisconsin Court of Appeals has considered "whether misrepresentations regarding the sale of articles of food are governed exclusively by Wis. Stat. § 100.183, or whether Wis. Stat. § 100.18 also applies to sales of food." *Gallego*, 707 N.W.2d at 543. In finding that section 100.18 does not apply to representations made in connection with the sale of food, the court in *Gallego* first compared section 100.18, which prohibits false and deceptive advertisements about the sale of "real estate, merchandise, securities, service or employment," with section 100.183, which prohibits false advertisements about the sale of "articles of food." *Id.* at 542–43. The court looked to the dictionary definition of "merchandise" and concluded that "although 'merchandise' may at times include articles of food, the term does not necessarily do so in all contexts." *Id.* at 544. The court also considered the "statutory background"[13] of sections 100.18 and 100.183. *Id.* Noting that the Wisconsin legislature enacted section 100.18 in 1913 and section 100.183 several years later in 1927, the court concluded that if section 100.18 "covered the sale of food, the legislature would have had no reason to enact a separate statute to prohibit misrepresentations in the sale of food," and finding that if section 100.18 applied to the sale of food, it would render section 100.183

---

[13] The court explained that "'[s]tatutory background' refers to 'previously enacted and repealed statutory provisions,' as opposed to the 'legislative history' of a provision, 'which was never enacted' by the legislature." *Gallego v. Wal-Mart Stores, Inc.*, 707 N.W.2d 539, 544 n.5 (Wis. Ct. App. 2005) (quoting *State ex rel. Kalal v. Circuit Court for Dane County*, 681 N.W.2d 110, 126 n.9 (Wis. 2004)).

"superfluous." *Id.* at 544–45 (noting that the Wisconsin Supreme Court has directed Wisconsin courts "where possible to give reasonable effect to every word, in order to avoid surplusage" (internal quotation marks omitted) (quoting *State ex rel. Kalal v. Circuit Court for Dane County*, 681 N.W.2d 110, 124 (Wis. 2004))). The Wisconsin Court of Appeals affirmed the dismissal of the plaintiff's claim under section 100.18, concluding that "a more specific statute, [section] 100.183, governs misrepresentations in the sale of 'articles of food'" and finding that section 100.183 "does not provide a private right of action." *Id.* at 541.

Since *Gallego*, no Wisconsin court and only one federal court has considered whether section 100.18 applies to representations about the sale of food. *See Lynch v. Tropicana Prods., Inc.*, No. 11-CV-7382, 2013 WL 2645050, at *8 (D.N.J. June 12, 2013).[14] This Court is therefore bound by the decision of the Wisconsin's appellate court in *Gallego*, unless there is persuasive evidence that the Wisconsin Supreme Court would reach a different result. *See V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (holding that a federal court "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.") (citing *Pahuta v. Massey–Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999)); *see also Greenberg v. Greenberg*, 646 F. App'x 31, 31 (2d Cir. 2016) ("In the absence of any statement by the state's highest court," federal courts are "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." (internal quotation marks omitted) (quoting *V.S.*, 595 F.3d at 432)); *New*

---

[14] In *Lynch*, the court followed the *Gallego* decision to find that section 100.18 did not apply to representations about the sale of food. *Id.* ("As it pertains to the first statute, § 100.18, the Wisconsin Court of Appeals has held that the statute is not applicable to 'articles of food.'" (citing *Gallego*, 707 N.W.2d at 544)).

*York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 210 (2d Cir. 2006) ("[T]he judgment of an

intermediate appellate state court 'is a datum for ascertaining state law which is not to be

disregarded by a federal court unless it is convinced by other persuasive data that the highest

court of the state would decide otherwise.'" (quoting *Comm'r v. Estate of Bosch*, 387 U.S. 456,

465 (1967))); *Vicuna v. O.P. Schuman & Sons, Inc.*, 106 F. Supp. 3d 286, 295 (E.D.N.Y. 2015)

("Federal courts follow intermediary state court decisions 'in the absence of convincing evidence

that the highest court of the state would decide differently.'" (quoting *Stoner v. N.Y. Life Ins.

Co.*, 311 U.S. 464, 466 (1940))).  While decisions of federal courts construing state law may also

be considered, "no deference" is owed to a "district court's interpretation" of state law.

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007).

### 1.  Plaintiffs have not shown that *Gallego* was wrongly decided

Plaintiffs contend that that the Court should decline to follow *Gallego*.  (Pls. Opp'n 18.)

Plaintiffs argue that under Wisconsin law, "[i]n the absence of ambiguity," courts must give

statutes their ordinary meaning without resorting to "legislative history, rules of interpretation, or

canons of construction."  (*Id.* (alteration in original) (quoting *Dep't of Transp. v. Transp.

Comm'n*, 330 N.W.2d 159, 162 (Wis. 1983)).)  Plaintiffs appear to argue that, because section

100.18 does not "indicate that it does not cover food products," section 100.18 is not ambiguous

and as a result, the court's use of "legislative history, rules of interpretation, or canons of

construction" in *Gallego* was inappropriate.  (*Id.*)

In explaining the "general principles of statutory interpretation" that Wisconsin courts are

to follow, the Wisconsin Supreme Court has stated that:

> Statutory interpretation begins with the language of the statute.  If
> the meaning of the statute is plain, we ordinarily stop the inquiry.
> Plain meaning may be ascertained not only from the words
> employed in the statute, but also from the context.  We interpret
> statutory language in the context in which those words are used; not

> in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.  Statutory history aids in a plain meaning analysis.

*Sorenson v. Batchelder*, --- N.W.2d ---, ---, 368 Wis.2d 140, 140 (2016) (alteration and internal quotation marks omitted)  (first citing *Kalal*, 681 N.W.2d at 124; and then citing *Adams v. Northland Equip. Co.*, 850 N.W.2d 272, 279 (Wis. 2014)); *see also Kalal*, 681 N.W.2d at 124 ("Context is important to meaning.  So, too, is the structure of the statute in which the operative language appears. . . .  Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." (collecting cases)).  If a statute has a "plain, clear statutory meaning, without ambiguity, [then] the statute is applied according to the plain meaning of the statutory terms," but "where the statute is capable of being understood by reasonably well-informed persons in two or more senses, then the statute is ambiguous," and a court "may then consult extrinsic sources, such as legislative history."  *Sorenson*, --- N.W.2d at ---, 368 Wis.2d at 140 (alteration and internal quotation marks omitted) (first citing *State v. Grunke*, 752 N.W.2d 769, 775 (Wis. 2008); and then citing *Kalal*, 681 N.W.2d at 125–26); *see also State v. Williams*, 852 N.W.2d 467, 473 (Wis. 2014) ("Although reviewing courts must begin with the statutory language, they sometimes consider it appropriate to turn to extrinsic sources. . . .  [I]f the interpreting court concludes that the statute is ambiguous, the court may consider extrinsic sources such as legislative history to discern the meaning of the statute." (citing *Kalal*, 681 N.W.2d at 125–26)).

In *Gallego*, the Wisconsin Court of Appeals first considered the "common, ordinary, and accepted meaning" of the statutory language in sections 100.18 and 100.183.  *Gallego*, 707 N.W.2d at 542–43.  The court noted that the relevant statutory term in section 100.18, "merchandise," was not defined in the statute and therefore consulted a dictionary to determine

its ordinary meaning. *Id.* at 543–44. The court determined that "although 'merchandise' may at times include articles of food, the term does not necessarily do so in all contexts." *Id.* at 544. The court concluded, however, that when the "statutory background" of sections 100.18 and 100.183 was considered, it became "clear" that merchandise as used in section 100.18 does not include food. *Id.* at 544–45. Thus, by interpreting the plain meaning of section 100.18 "in relation to the language of [a] surrounding or closely-related statute[]," section 100.183, "to avoid absurd or unreasonable results," and using statutory history without resorting to extrinsic sources such as legislative history, the court in *Gallego* followed the principles of statutory interpretation established by the Wisconsin Supreme Court. *See Sorenson*, --- N.W.2d at ---, 368 Wis. 2d at 140 ("Statutory interpretation begins with the language of the statute. . . . Plain meaning may be ascertained not only from the words employed in the statute, but also from the context. . . . Statutory history aids in a plain meaning analysis." (alteration, citations and internal quotation marks omitted)).

Plaintiffs have failed to present persuasive evidence that the Wisconsin Supreme Court would decide this issue differently from the Court of Appeals' decision in *Gallego*. *See V.S.*, 595 F.3d at 432 (stating that a federal court "is bound" to follow a state's intermediate appellate court unless there is "persuasive evidence that the state's highest court would reach a different conclusion"); *Vicuna*, 106 F. Supp. 3d at 295 (stating that a federal court should follow a state's intermediate state court unless there is "convincing evidence that the highest court of the state would decide differently").

### 2.  Under *Gallego*, Plaintiffs have not stated a section 100.18 claim

Applying *Gallego*, Plaintiffs cannot bring their claim for false, deceptive or misleading representations as to the Infant Formula under section 100.18. Accordingly, the Court grants Defendant's motion and dismisses Plaintiffs' section 100.18 claim.

### ii.   Section 100.20 claim

Plaintiffs argue that section 100.20 creates a private right of action for food labeling violations and that they have stated a claim under section 100.20 based on the violation identified in the FDA Warning Letter.  (Pls. Opp'n 17–18.)  Defendant argues that Plaintiffs have not stated a claim under Wisconsin Statutes § 100.20 because the FDA has concluded its investigation.  (Def. Reply 7–8.)  Defendant alternatively argues that any section 100.20 claim is limited to the labeling on the Infant Formula that was sold as a 23.2 ounce milk-based powder because the FDA Warning Letter addresses only the labeling on that product.  (*Id.* at 7–8.)

Wisconsin Statutes § 100.20(2)(a) authorizes the Wisconsin Department of Agriculture, Trade and Consumer Protection "to 'issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair.'" *Gallego*, 707 N.W.2d at 546 (quoting Wis. Stat. § 100.20(2)(a)).  "Section 100.20 also authorizes a private right of action," permitting "[a]ny person suffering pecuniary loss because of a violation by any other person of any order issued under this section [to] sue for damages . . . ." *Id.* at 546–47 (internal quotation marks omitted) (quoting Wis. Stat. § 100.20(5)).  Pursuant to this authority, the Wisconsin Department of Agriculture, Trade and Consumer Protection has promulgated section ATCP 90.10(1) of the Wisconsin Administrative Code, which "requires 'food sold or distributed for sale' in Wisconsin to be 'labeled in compliance with applicable rules adopted by the [FDA].'" *Id.* at 547 (quoting Wis. Admin. Code § ATCP 90.10).  In *Gallego*, the Wisconsin Court of Appeals held that section 100.20 and section ATCP 90.10(1) together permit private plaintiffs to sue for violations of FDA food labeling regulations.  *Id.* at 548–49.

Plaintiffs have stated a claim for misleading labeling under section 100.20 as to the Infant Formula labeling that the FDA identified in the FDA Warning Letter.  In the FDA Warning Letter, the FDA informed Defendant that the labeling on the Infant Formula that was sold as a

23.2-ounce milk-based powder violated 21 C.F.R. § 101 because "the labeling is misleading."

(FDA Warning Letter 1.)  The FDA found that the labeling was misleading because it stated that

the Infant Formula is the "1st & only routine formula to reduce risk of developing allergies,"

which was a health claim that the FDA had previously considered and rejected as lacking

"credible evidence" in support of the claim.  (FDA Warning Letter 1–2 (capitalization omitted).)

Plaintiffs' allegations therefore sufficiently state a section 100.20 claim as to the Infant

Formula's labeling.[15]

Defendant argues that because the "FDA has closed its investigation" of the violations

identified in the FDA Warning Letter, the "issues raised in the [FDA] Warning Letter are no

longer relevant," and presumably, cannot form the basis of Plaintiffs' section 100.20 claim.

(Def. Reply 7.)  In support of this argument, Defendant relies on a letter from the FDA dated

July 13, 2015, which states that the FDA has completed "an evaluation" of Defendant's

"corrective actions in response to [the FDA Warning Letter]" and that it "appears that

[Defendant] addressed the violations contained in [the FDA Warning Letter]."  (Ex. 4, annexed

to Decl. of Geoffrey W. Castello, Docket Entry No. 23-2.)  However, Defendant has not

presented any legal support for the proposition that the Court should consider this letter on a

---

[15]  Defendant argues that any section 100.20 claim is limited to the specific size of Infant
Formula identified in the FDA Warning Letter, because the FDA's conclusion that the Infant
Formula's labeling violated 21 C.F.R. § 101 was based on the representation on the labeling that
the Infant Formula reduces the risk that infants will develop allergies, a claim the FDA
previously rejected.  (FDA Warning Letter 1–2.)  The Court finds that Plaintiffs' section 100.20
claim encompasses all Infant Formula labeled with the same representation identified by the
FDA in the FDA Warning Letter.  However, because section ATCP 90.10(1) applies only to food
labeling and not to other forms of advertising or marketing, Plaintiffs cannot state a section
100.20 claim for the allegedly misleading advertising or marketing that did not appear on the
labeling of the Infant Formula.  *See Gallego*, 707 N.W.2d at 547 (noting that ATCP § 90.10(1)
requires that food sold in Wisconsin be "labeled in compliance" with FDA regulations and
permitting the plaintiff to assert a claim pursuant to section 100.20 because the defendant's
salmon was not labeled properly).

motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As noted above, in deciding a motion to dismiss under Rule 12(b)(6), the Court must consider the allegations in the Complaint, any exhibits attached to the Complaint, any documents incorporated by reference to the Complaint or any documents integral to the Complaint. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Because the Complaint does not refer to the July 13, 2015 letter, or rely on the terms or effects of the July 13, 2015 letter, the Court cannot consider the July 13, 2015 letter in deciding Defendant's motion. *See Goel*, 820 F.3d at 559 ("A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) ("To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003))).[16]

Because Plaintiffs have stated a claim for misleading labeling under section 100.20, the Court denies Defendant's motion as to Plaintiffs' claim under Wisconsin Statutes § 100.20.

### e. Sufficiency of the pleadings

Defendant moves to dismiss Plaintiffs' claims under the FDUTPA, Florida Statutes § 817.41, and Wisconsin Statutes §§ 895.446 and 943.20 on the grounds that Plaintiffs have

---

[16] Moreover, even if the Court could consider the July 13, 2015 letter, Defendant has presented no authority to support a conclusion that a plaintiff cannot bring an action under section 100.20 where the FDA subsequently found that a defendant corrected its prior violations. Neither section 100.20 nor *Gallego* suggests that where an agency has concluded its investigation and determined that past violations have been corrected, a plaintiff is precluded from asserting a claim under section 100.20 for the past violations. *See* Wis. Stat. § 100.20(5) (providing that any person who has suffered pecuniary loss because of a violation of any order issued under this section may sue for damages); *Gallego*, 707 N.W.2d at 547 (holding that the plaintiffs stated a claim under section 100.20 because the defendant sold food that was labeled in violation of ATCP § 90.10(1)).

failed to sufficiently plead these claims. (Def. Mem. 8.) Defendant argues that Plaintiffs have (1) failed to comply with Rule 9(b) of the Federal Rules of Civil Procedure by identifying with particularity the statements to which they were exposed, (2) failed to sufficiently allege that Defendant's representations regarding the Infant Formula were false, (3) failed to allege reliance or causation, and (4) failed to adequately plead damages. (*Id.* at 9–16.) The Court discusses each argument below.

### i. Rule 9(b)

Defendant contends that Plaintiffs have failed to identify with particularity the allegedly false and misleading representations as required by Rule 9(b) of the Federal Rules of Civil Procedure. (Def. Mem. 9.) Defendant concedes that Plaintiffs attached examples of the Infant Formula's advertising and labeling to the Complaint but argues that "Plaintiffs do not allege that they actually reviewed or were otherwise exposed to these statements," and have made only vague allegations regarding which representations they were exposed to. (*Id.* at 9–10.)

Plaintiffs argue that their FDUTPA claim is not subject to the Rule 9(b) pleading standard, but that, even if it is, they have sufficiently identified Defendant's false and misleading representations by including examples of Defendant's representations of the Infant Formula in the Complaint. (Pls. Opp'n 7.) Plaintiffs further argue that they have sufficiently pled that they were exposed to those representations as to all claims, including the FDUTPA claim.[17] (*Id.* at 7–

---

[17] It is unclear whether FDUTPA claims are subject to the Rule 9(b) standard. *See, e.g.*, *Finerman v. Marriott Vacations Worldwide Corp.*, No. 14-CV-1154, 2015 WL 5440611, at *2 (M.D. Fla. Sept. 15, 2015) ("Courts are divided as to whether a FDUTPA claim must be pled with particularity."); *Total Containment Sols., Inc. v. Glacier Energy Servs., Inc.*, No. 15-CV-63, 2015 WL 3562622, at *2 (M.D. Fla. June 5, 2015) ("It is fair to say that there has been inconsistency among Florida's federal courts regarding whether Rule 9(b)'s pleading standard applies to all FDUTPA claims or only those alleging fraudulent activity." (citing *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1290 (M.D. Fla. 2009))). The Court does not decide this issue because Plaintiffs' pleadings satisfy the Rule 9(b) standard.

8.) Plaintiffs also argue that Defendant has misconstrued the cases upon which it relies. (*Id.* at 7 n.9.)

"Rule 9(b) requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (alteration in original) (quoting Fed. R. Civ. P. 9(b)). "To satisfy this Rule, a complaint alleging fraud must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"[18] *Id.* (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). "Ultimately, whether a complaint satisfies Rule 9(b) depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013); *see Kane ex rel, U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 383 (S.D.N.Y. 2015) (quoting same); *U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 508 (S.D.N.Y. 2014) (quoting same); *U.S. ex rel. Kester v. Novartis Pharma. Corp.*, 23 F. Supp. 3d 242, 258 (S.D.N.Y. 2014) (quoting same); *see also Rombach v. Chang*, 355 F.3d 164, 171 (discussing the

---

[18] In determining whether Plaintiffs have satisfied the Rule 9(b) pleading standard, Second Circuit law governs. *See In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450, 2015 WL 7018369, at *13 (S.D.N.Y. Nov. 12, 2015) ("In evaluating the applicability of Rule 9(b), the Court also notes that, as is always the case, it is bound by Second Circuit law pertaining to the applicability of Rule 9(b)." (citing *Nw. Mut. Life Ins. Co. v. Banc of Am. Sec., LLC*, 254 F. Supp. 2d 390, 396–97 (S.D.N.Y. 2003))); *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 361 (E.D.N.Y. 2014) ("[B]ecause Rule 9(b) is a rule promulgated pursuant to a federal statute, this Court is required to follow the precedent of the Court of Appeals for the Second Circuit with respect to the interpretation and application of Rule 9(b)." (alteration in original) (quoting *Nw. Mut. Life Ins.*, 254 F. Supp. 2d at 396))).

purpose of the particularity requirement and emphasizing fair notice to the defendant).

Plaintiffs specify in the Complaint and attach to the Complaint examples of the representations by Defendant that Plaintiffs allege are false and misleading, including the representations that the Infant Formula is the "1st & only routine formula to reduce the risk of developing allergies" and that the Infant Formula is "the first and only formula brand made from 100% whey protein hydrolyzed, and that meets the criteria for a FDA Qualified Health Claim for atopic dermatitis." (Compl. ¶¶ 43–44, 48–51 (capitalization omitted); Exs. A–F.) Plaintiffs allege that these representations were located in several places, including on a sticker placed on the Infant Formula, on the packaging in which the Infant Formula was sold, in a television commercial dated April 9, 2012, and in a magazine advertisement dated August 5, 2013. (Compl. ¶¶ 43–44, 48, 51.) Plaintiffs also allege that the representations are false and misleading because the Infant Formula does not reduce the risk that infants will develop allergies and because Defendant failed to adequately qualify its health claim regarding the Infant Formula's ability to reduce the risk of infants developing atopic dermatitis. (*Id.* ¶¶ 43–51.) Plaintiffs further allege that they viewed and relied on these representations before purchasing the Infant Formula. (*Id.* ¶¶ 53, 61, 64, 105.)

Based on these allegations, Plaintiffs have identified with particularity the allegedly deceptive representations, the speaker, what was stated, when it was stated and where the statements were made. Plaintiffs have also explained why they allege that the statements are deceptive. These allegations satisfy Rule 9(b). *See In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450, 2015 WL 7018369, at *33 (S.D.N.Y. Nov. 12, 2015) (holding that the plaintiffs "sufficiently alleged the who, what, when, where, and why of the fraud at issue under Rule 9(b)" because the plaintiffs identified the "*specific ads* that made *specific promises*"

regarding the products at issue); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 298

(S.D.N.Y. 2015) (finding that the plaintiff satisfied Rule 9(b) because the plaintiff alleged that

the defendants "made personal guarantees in national media advertisements," that the plaintiff

"heard [the] [d]efendants' media advertisements" and that the plaintiff "relied on these

representations"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL

4647512, at *23–24 (E.D.N.Y. Aug. 29, 2013) (holding that the plaintiffs met the Rule 9(b)

heightened pleading requirement because the plaintiffs "allege[d] that defendants PepsiCo and

Frito–Lay (the 'who') falsely stated that the products are 'All Natural,' but in fact, are

not . . . (the 'what')," and further alleged "[w]hen the defendants labeled, and the plaintiffs

purchased, the products between January 1, 2010 and the present (the 'when'), the plaintiffs

relied on this representation, which was placed prominently on the products' packaging (the

'where')"); *cf. Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164, 172 (W.D.N.Y. 2014) (holding that

the plaintiff did not satisfy the Rule 9(b) standard where the plaintiff "made only general

allegations of fraudulent conduct," upon information and belief, and failed to identify the

specific alleged misrepresentations).  The Court therefore finds that Plaintiffs have adequately

identified the representations that they allege are false and misleading pursuant to Rule 9(b).[19]

---

[19]  In arguing that Plaintiffs have not sufficiently pled the specific representations, Defendant relies on *Ball v. Sony Elecs. Inc.*, No. 05-CV-307, 2005 WL 2406145, at *4 (W.D. Wis. Sept. 28, 2005), and *Valenti v. Hewlett Packard Co.*, 685 N.W.2d 172 (Wis. Ct. App. 2004), where the courts dismissed the plaintiffs' deceptive advertising claims for failure to identify the allegedly deceptive advertisements.  (Def. Reply 3–4.)  In *Ball*, the plaintiffs alleged that the defendant made three representations that were deceptive: a representation regarding its warranty, a representation on its website and "other representations" regarding the product at issue.  *Ball*, 2005 WL 2406145, at *4.  After finding that the warranty representations and those made on the website were not deceptive, the court stated that the plaintiffs were "left with the general allegation that defendant made 'other representations to consumers regarding the'" defendant's product.  *Id.*  Because the plaintiff failed to identify the specific representations, the court held that the plaintiffs' allegations were "too vague."  *Id.*  The court also noted that the

## ii. Plaintiffs have alleged false and misleading representations

Defendant argues that Plaintiffs have failed to state a claim under the FDUTPA, Florida Statutes § 817.41 and Wisconsin Statutes §§ 895.446 and 943.20 because Plaintiffs have not adequately alleged that Defendant made a false representation regarding the Infant Formula. (Def. Mem. 12.) Defendant also argues that Plaintiffs are asserting a lack-of-substantiation claim as to Defendant's health claim, and that they cannot assert such a claim under Florida or Wisconsin law. (*Id.*)

### 1. False and misleading representations under Florida and Wisconsin law

In order to state a claim under the FDUTPA or Florida Statutes § 817.41, a plaintiff must establish that the defendant made a false or misleading representation. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) (stating that a claim under the FDUTPA requires a deceptive or misleading practice (citing Fla. Stat. §§ 501.201–213)); *Joseph v. Liberty Nat'l Bank*, 873 So. 2d 384, 387–88 (Fla. Dist. Ct. App. 2004) (stating that a claim under Florida Statutes § 817.41 requires a false or misleading statement (citing Fla. Stat. § 817.41)). Whether a representation is false or misleading is generally a question of fact. *See Salters v. Beam Suntory, Inc.*, No. 14-CV-659, 2015 WL 2124939, at *2 (N.D. Fla. May 1, 2015) ("[W]hether a statement is false or misleading is ordinarily a question of fact."); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 995 (S.D. Cal. 2014) (Under Florida

---

plaintiffs had failed to allege that they heard "any of the unidentified statements in making their purchases." *Id.* In *Valenti*, an unpublished opinion, the plaintiffs conceded that they did not see any of the allegedly deceptive statements. *Valenti*, 685 N.W.2d at 172. The court held that the plaintiffs had failed to state a claim because even if the statements at issue were misleading, "the statements could not have caused the consumers any losses if they did not see them." *Id.* Unlike the plaintiffs in *Ball* and *Valenti* who respectively did not specify the representations and did not see the statements, Plaintiffs in the instant case have specifically identify the representations they believe are false and misleading and also allege that they viewed these representations before purchasing the Infant Formula. (Compl. ¶¶ 43–44, 48–51, 53, 61, 64, 105; Exs. A–F.).)

law, "[w]hether particular conduct constitutes such an unfair or deceptive trade practice is a question of fact." (internal quotation marks omitted) (quoting *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1293 (M.D. Fla.2009))).

In order to state a claim under Wisconsin Statutes §§ 895.446 and 943.20, a plaintiff must establish that the defendant made a false representation. *See* Wis. Stat. Ann. § 943.20 (providing that a defendant is liable if he "[o]btains title to property of another person by intentionally deceiving the person with a false representation")[20]; *Pierce Cty. v. Ladner*, 874 N.W.2d 347, 347 (Wis. Ct. App. 2016) (stating that claims under Wisconsin Statutes §§ 895.446 and 943.20 require that the defendant "made a false representation to the owner of the property") (citing *Malzewski v. Rapkin*, 723 N.W.2d 156, 164 (Wis. Ct. App. 2006))); *Ferris v. Location 3 Corp.*, 804 N.W.2d 822, 826 (Wis. Ct. App. 2006) (stating that the elements of a claim under Wisconsin Statutes §§ 895.446 and 943.20 include "that the defendant made false representations to the plaintiff").

Defendant contends that its qualified health claim regarding the Infant Formula's ability to reduce the risk of infants developing atopic dermatitis is not literally false because the FDA determined that its representations regarding atopic dermatitis were "generally consistent" with the qualified health claims proposed by the FDA, and the scientific evidence cited by Plaintiffs did not find that its qualified health claim is false. (Def. Mem. 14–15.) Defendant also argues

---

[20] Although Wisconsin Statutes § 943.20 is a criminal statute, Wisconsin Statutes § 895.446 provides civil liability for violations of Wisconsin Statutes § 943.20. *KDC Foods, Inc. v. Gray, Plant, Mooty, Mooty & Bennett, P.A.*, 763 F.3d 743, 749 (7th Cir. 2014) ("Theft by fraud is a crime under Wis. Stat. § 943.20(1)(d). However, under Wis. Stat. § 895.446(1), a 'person who suffers damage or loss by reason of intentional conduct' prohibited by § 943.20 may bring a civil action for damages.").

that the FDA found that there was some scientific support for its qualified health claim. (*Id.* at 15.)

Plaintiffs do not argue that Defendant's qualified health claim regarding atopic dermatitis is literally false; Plaintiffs argue that it is misleading because Defendant did not include the qualifying statement required by the FDA. (Pls. Opp'n 10 & 13.) Plaintiffs separately argue that Defendant's representation that the Infant Formula reduces the risk that infants will develop allergies is false. The Court first considers whether Defendant's representation that the Infant Formula reduces the risk that infants will develop allergies is false, and then considers whether Defendant's qualified health claim regarding atopic dermatitis is misleading.

### A. False representation

Plaintiffs allege that Defendant represented that the Infant Formula is the "1st & only routine formula to reduce the risk of developing allergies," and that this representation was located on a sticker placed on the Infant Formula. (Compl. ¶ 43 (capitalization omitted); Ex. A) Plaintiffs argue that Defendant's representation that the Infant Formula reduces the risk that infants will develop allergies is literally false because the FDA determined in 2006 that there was no scientific evidence to support the claim and because a 2011 scientific study contradicts Defendant's claim. (*Id.*; *see also* Compl. ¶¶ 28, 34–35.)

Plaintiffs have sufficiently alleged the falsity of this representation. In 2005, Defendant petitioned the FDA for approval of a qualified health claim that the Infant Formula reduces the risk that infants will develop allergies. (*Id.* ¶ 27.) In 2006, the FDA denied Defendant's petition after determining that there was no credible evidence that the Infant Formula reduces the risk

that infants will develop allergies.[21]  (*Id.* ¶ 28; FDA Warning Letter 3.)  In addition, Plaintiffs

allege that a 2011 scientific study concluded that partially hydrolyzed whey protein, the relevant

ingredient in the Infant Formula, does not lower the risk that infants will develop allergies.

(Compl. ¶¶ 34–35.)  Based on these allegations in the Complaint, Plaintiffs have sufficiently

alleged the falsity of Defendant's representation that the Infant Formula reduces the risk that

infants will develop allergies.  Defendant's argument that its qualified health claim regarding

atopic dermatitis is not literally false does not respond to these allegations.

## B.    Misleading representation

Plaintiffs allege that, in the labeling and advertising of the Infant Formula, Defendant

represented that its qualified health claim — that the Infant Formula reduces the risk that infants

will develop atopic dermatitis — was endorsed by the FDA.  (Compl. ¶¶ 44, 47, 50–51; Ex. B,

E–F, annexed to Compl.)  This representation was located in several places, including on the

packaging in which the Infant Formula was sold, in a television commercial dated April 9, 2012,

and in a magazine advertisement dated August 5, 2013.  (Compl. ¶¶ 44, 48, 51.)  Plaintiff argues

that Defendant's representation is misleading because Defendant did not include the qualifying

statement as required by the FDA.  (Pls. Opp'n 10–11.)

The FDA notified Defendant in the FDA Warning Letter that although Defendant's

representations regarding its qualified health claim were "generally consistent" with the four

qualified health claims proposed by the FDA, Defendant's failure to include the qualifying

statement rendered Defendant's representations misleading in violation of FDA regulations

because the missing qualifying statement "provides essential information necessary to ensure the

---

[21]  In 2009, the FDA permitted Defendant to make a qualified health claim regarding the
Infant Formula but limited that claim to the Infant Formula's ability to reduce the risk of infants
developing atopic dermatitis.  (Am. Compl. ¶¶ 29–33.)

safety of consumers." (FDA Warning Letter 3.)

Plaintiffs allege that Defendant's failure to include the qualifying statement with its qualified health claim could, as the FDA concluded, mislead a reasonable consumer. (Pls. Opp'n 10 & 13.) These allegations are sufficient to state a claim under FDUTPA and Florida Statutes § 817.41. *See Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1378 (S.D. Fla. 2014) (stating that the plaintiffs had sufficiently alleged that a reasonable consumer would be deceived by the defendant's misrepresentations because "[a]t a minimum a reasonable consumer would expect a company's representation" regarding its products to conform with relevant federal regulations). However, because this representation is misleading but not literally false, it is insufficient to state a claim under Wisconsin Statutes §§ 895.446 and 943.20. *See* Wis. Stat. Ann. § 943.20 (providing for liability where a defendant deceives a plaintiff "with a false representation"); *Pierce Cty.*, 874 N.W.2d at 347 (stating that "a false representation" is required to state a claim under Wisconsin Statutes §§ 895.446 and 943.20); *Ording v. Wis. State Home Servs., Inc.*, 865 N.W.2d 885, 885 (Wis. Ct. App. 2015) (finding that because the plaintiffs' basement flooded after they hired the defendant to waterproof their basement, the defendant's representation that the plaintiffs would "*never* have water in their basement again" if they hired defendant to waterproof their basement was a false representation).

Defendant argues that Plaintiffs' claims fail because Defendant's qualified health claim is not literally false, (Def. Mem. 14–15), but Plaintiffs are alleging that the qualified health claim is misleading, not that it is literally false. (Pls. Opp'n 11.) Because Plaintiffs have sufficiently alleged that Defendant's failure to include the qualifying statement could mislead a reasonable consumer, Plaintiffs have sufficiently stated a claim under the FDUTPA and Florida Statutes

§ 817.41 but not under Wisconsin Statutes §§ 895.446 and 943.20.[22]

## 2. Plaintiffs do not bring lack-of-substantiation claims

Defendant contends that by asserting that there is a lack of sufficient scientific evidence to support its representations regarding the Infant Formula, Plaintiffs are attempting to assert lack-of-substantiation claims.[23] (Def. Mem. 12–13.) Defendant argues that because the FTC

---

[22] In support of its argument that Plaintiffs fail to allege that this representation is false, Defendant relies on *In re GNC Corp.*, 789 F.3d 505 (4th Cir. 2015), where the Fourth Circuit dismissed a false advertising claim brought under various state consumer protection statues. (Def. Mem. 17 (citing *GNC*, 789 F.3d at 516).) In *GNC*, the Fourth Circuit held that "in order to state a false advertising claim on a theory that representations have been proven to be false, plaintiffs must allege that all reasonable experts in the field agree that the representations are false." *Id.* at 516. The court found that because the plaintiffs had conceded "that some reasonable and duly qualified scientific experts" agreed with the defendant's representation, the plaintiffs could not argue that the representation was "literally false." *Id.* at 515. In reaching its decision, the Fourth Circuit considered the FDUTPA and other state laws, but it did not consider Wisconsin law or a claim under Florida Statutes § 817.41. However, unlike in *GNC* where the court found that there was some credible scientific evidence supporting the allegedly deceptive representations, here, according to Plaintiffs' allegations, there is no credible scientific evidence supporting Defendant's claim that its Infant Formula reduces the risk that infants will develop allergies. (FDA Warning Letter 2 (stating that the FDA found there was "no credible evidence to support" the claim that the Infant Formula reduces the risk that infants will develop allergies). Moreover, although Defendant argues that there is some scientific support for its qualified health claim, factual disputes about whether the scientific evidence actually disproves the qualifying health claim, or whether there is mere scientific debate regarding the qualifying health claim, cannot be resolved by the Court on a motion to dismiss. *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) (finding to be sufficient that the plaintiff cited to "numerous scientific studies that arguably support their conclusion" that a product could not provide its promised benefits); *In re Gerber Probiotic Sales Practices Litig.*, No. 12-CV-835, 2013 WL 4517994, at *8 (D.N.J. Aug. 23, 2013) ("The parties dispute the reliability and findings of certain studies . . . . [T]he Court agrees . . . that it is not appropriate to consider the content of the studies and resolve the factual issues at this stage of the litigation."). Moreover, whether or not there is some scientific proof supportive of Defendant's qualified health claim is irrelevant to the Court's determination as the issue is whether or not the qualified health claim is misleading as a result of Defendant's failure to include the qualifying statement, not whether the qualifying health claim is literally false. As discussed above, Plaintiffs have sufficiently alleged that Defendant's failure to include the qualifying statement with its qualified health claim could mislead a reasonable consumer.

[23] Defendant cites only to Florida law in support of its arguments that Plaintiffs are asserting a lack-of-substantiation claim. The Court therefore considers these arguments only as

"retains exclusive jurisdiction over ensuring that advertising claims are substantiated," only the FTC is permitted to assert a lack-of-substantiation claim, i.e., that there is insufficient scientific support for Defendant's representations regarding the Infant Formula. (*Id.* at 13–14.) Plaintiffs argue that they are not alleging lack-of-substantiation claims, but rather, that Defendant's representation that the Infant Formula reduces the risk that infants will develop allergies is literally false and that Defendant's representation that the FDA endorsed Defendant's qualified health claim is misleading. (Pls. Opp'n 12–14.) Plaintiffs further argue that, even if they are alleging lack-of-substantiation claims, they can properly assert such claims under both Florida and Wisconsin law.[24] (*Id.* at 14–15.)

A lack-of-substantiation claim is a claim that a representation regarding a product is false or misleading because of a lack of scientific evidence to substantiate the representation. *See Bitton v. Gencor Nutrientes, Inc.*, --- F. App'x ---, ---, 2016 WL 3545346, at *2 (9th Cir. June 28, 2016) (noting that a plaintiff asserting a lack-of-substantiation claim alleges that the defendant's representation is misleading because the defendant has not substantiated the representation with scientific evidence); *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 n.2 (7th Cir. 2001) (noting that a plaintiff asserting a lack-of-substantiation claim alleges the defendant's representation has been inadequately substantiated with scientific evidence); *Hughes v. Ester C*

---

to Plaintiffs' claims under Florida law.

[24] It is unclear whether a lack-of-substantiation claim is available under Florida law. *Toback v. GNC Holdings, Inc.*, No. 13-CV-80526, 2013 WL 5206103, at *3 (S.D. Fla. Sept. 13, 2013) (noting that it is "unclear" whether a claim for lack of substantiation is available under Florida law); *see also In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1344 n.12 (S.D. Fla. 2013) ("Defendant has not cited to, and the Court has not found, any case that states that consumer claims for lack of scientific substantiation are not cognizable under the consumer fraud statutes of Arizona, Arkansas, or Florida."). Because the Court finds that Plaintiffs are not asserting a lack-of-substantiation claim, the Court does not decide whether Florida law permits private plaintiffs to assert a lack-of-substantiation claim.

*Co.*, 930 F. Supp. 2d 439, 455–59 (E.D.N.Y. 2013) (noting that a lack-of-substantiation claim is a claim that a "defendant's representations are false because they lack scientific support"); *Fraker v. Bayer Corp.*, No. 08-CV-1564, 2009 WL 5865687, at *8 (E.D. Cal. Oct. 6, 2009) (noting that a lack-of-substantiation claim is a claim that a representation "that a product has certain attributes" is false or misleading because it has not been "backed up by scientific evidence"). Under Florida law, a claim that a representation is false or misleading because it has been disproven or contradicted by scientific evidence is not a lack-of-substantiation claim. *See In re Horizon Organic Milk*, 955 F. Supp. 2d at 1344 ("Plaintiffs are not proceeding under a lack of scientific substantiation theory [because] Plaintiffs are not claiming that there is no scientific evidence to support [the defendant's] brain health representations; instead, they are claiming that the competent scientific evidence shows that [the defendant's] representations are actually false."); *Toback*, 2013 WL 5206103, at *3 (finding that by "affirmatively alleg[ing]" that scientific studies showed that the active two ingredients in the defendants' products were "ineffective in promoting joint health," contrary to the defendants' representation, the plaintiff went "further than alleging that [d]efendants have failed to substantiate their representations with scientific evidence, but instead allege[d] that scientific evidence exist[ed] to contradict [d]efendants' representations and demonstrate their falsity" (citing *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727, 2012 WL 5382218, at *1–3 (S.D. Cal. Nov. 1, 2012))); *see also Eckler*, 2012 WL 5382218, at *3 ("There is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved. In common usage, we might say that both are 'unsubstantiated,' but the caselaw (and common sense) imply that in the context of a false advertising lawsuit an 'unsubstantiated' claim is only the former. . . . To the extent [the plaintiff] points to studies that allegedly debunk the purported benefits of

glucosamine hydrochloride, she isn't just saying those benefits are unsubstantiated. She is saying they are positively false.").

Plaintiffs allege that Defendant's qualified health claim is misleading because it did not include the qualifying statement. Plaintiffs also allege that Defendant's representation that the Infant Formula reduces the risk that infants will develop allergies is literally false because it is contradicted by all of the credible scientific evidence. Under Florida law, these allegations do not suggest a lack-of-substantiation claim. *See Horizon Organic Milk*, 955 F. Supp. 2d at 1344 (finding that because the plaintiffs alleged that "competent scientific evidence" contradicted the defendant's representations, the plaintiffs were not alleging a lack-of-substantiation claim); *Toback*, 2013 WL 5206103, at *3 (finding that the plaintiff did not allege a lack-of-substantiation claim where he "allege[d] that scientific evidence exist[ed] to contradict [the] [d]efendants' representations and demonstrate their falsity").

### iii. Causation and reliance

Defendant argues that Plaintiffs have not adequately pled that Defendant's representations caused Plaintiffs' injuries or that Plaintiffs relied on these representations. (Def. Mem. 10–11.) Defendant specifically argues that Plaintiffs have failed to allege that the representations "were material to Plaintiffs' decisions to purchase [the Infant Formula]." (*Id.* at 11.) Plaintiffs contend that they have sufficiently pled that Defendant's representations caused their injuries and that they relied on the representations. (Pls. Opp'n 9.) Plaintiffs allege that they purchased the Infant Formula after "reviewing" the deceptive advertisements, that they based their decisions to purchase the Infant Formula on Defendant's representations regarding the Infant Formula's ability to reduce the risk of infants developing allergies, and that they would not have purchased the Infant Formula had they known that these representations were not

accurate. (Compl. ¶¶ 53, 61–62, 64–65, 67–68.) The Court addresses Plaintiffs' FDUPTA claim separately and addresses Plaintiffs' claims under all other statutes collectively.

### 1. Claim under FDUTPA

In order to establish causation under FDUTPA, "a plaintiff need not prove reliance on the allegedly false statement . . . , but rather a plaintiff must simply prove that an objective reasonable person would have been deceived." *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011); *see also Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) ("[T]o prove the causation element of a FDUTPA claim, 'a plaintiff need not prove reliance on the allegedly false statement . . . but rather a plaintiff must simply prove that an objectively reasonable person would have been deceived." (second alteration in original) (quoting *Fitzpatrick*, 635 F.3d at 1283)); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 691 (S.D. Fla. 2014) ("'FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct.' Instead of actual reliance, a plaintiff must simply prove that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" (quoting *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009))).

Plaintiffs have alleged that Defendant's representations regarding the Infant Formula would deceive a reasonable consumer. *See* Part II(e)(ii) *supra*. Plaintiffs have therefore satisfied the FDUTPA's causation element.

### 2. Claims under Florida Statutes § 817.41 and Wisconsin Statutes §§ 895.446 and 943.20

To state a claim under Florida Statutes § 817.41 and Wisconsin Statutes §§ 895.446 and 943.20, a plaintiff must sufficiently allege justifiable reliance on the defendant's alleged misrepresentations. *See Pierce Cty.*, 874 N.W.2d at 347 (noting that in order to state a claim

under Wisconsin Statutes §§ 895.446 and 943.20, a plaintiff must establish that his or her reliance on the defendant's representation was justifiable (citing *Hennig v. Ahearn*, 601 N.W.2d 14, 24 (Wis. Ct. App. 1999))); *Dillhyon v. Dunn*, 812 N.W.2d 540, 540 (Wis. Ct. App. 2012) (noting that justifiable reliance is an element of a claim under Wisconsin Statutes §§ 895.446 and 943.20 (*Hennig*, 601 N.W.2d at 24)); *Black Diamond Props., Inc. v. Haines*, 69 So. 3d 1090, 1094–95 (Fla. Dist. Ct. App. 2011) (noting that in order to state a claim under section 817.41, a plaintiff must "prove each of the elements of common law fraud in the inducement," which requires the plaintiff to allege that she "suffered injury in justifiable reliance on the representation" (quoting *Joseph v. Liberty Nat'l Bank*, 873 So. 2d 384, 388 (Fla. Dist. Ct. App. 2004))); *see also Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1304 n.11 (11th Cir. 2003) ("Justifiable reliance is an element of fraud under Florida law." (citing *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 1999))).

"In examining the concept of justifiable reliance, the Florida Supreme Court has explained [that] if the recipient knows that the statement is false or its falsity is obvious to him, his reliance is improper . . . ." *Rose v. ADT Sec. Servs., Inc.*, 989 So. 2d 1244, 1247 (Fla. Dist. Ct. App. 2008) (internal quotation marks and alterations omitted) (quoting *M/I Schottenstein Homes, Inc. v. Azam*, 813 So. 2d 91, 94–95 (Fla. 2002)); *see also Pierce Cty.*, 874 N.W.2d at 347 ("The general rule in Wisconsin, as elsewhere, is that the recipient of a fraudulent misrepresentation is justified in relying on it, unless the falsity is actually known or is obvious to ordinary observation.  And, whether falsity is obvious is usually a question of fact." (internal quotation marks omitted) (quoting *Hennig*, 601 N.W.2d at 24)).  Thus, if a plaintiff had notice of the fact on which the defendant's misrepresentation is premised and "had the opportunity to discover its true nature," but chose not to "exercise that opportunity," the plaintiff's reliance is

"unreasonable, as a matter of law." *Pierce Cty.*, 874 N.W.2d at 347; *see also Green Leaf Nursery*, 341 F.3d at 1304 (holding that the plaintiff's reliance on the defendant's misrepresentation was unreasonable where the parties "were in an antagonistic relationship," the plaintiff knew of the defendant's misconduct and the plaintiff had previously accused the defendant of intentionally making false statements); *Malzewski*, 723 N.W.2d at 163–64 (holding that the plaintiffs' reliance on the defendants' misrepresentations was unreasonable because the plaintiffs had notice of the "true nature" of the home they purchased and waived their right to inspect the home).

Plaintiffs allege that, prior to purchasing the Infant Formula, they reviewed Defendant's representations that the Infant Formula reduces the risk that infants will develop allergies and that the FDA endorsed Defendant's qualified health claim regarding atopic dermatitis, and relied on these representations in deciding to purchase the Infant Formula. (Compl. ¶¶ 60–66.) Plaintiffs also allege that they would not have purchased the Infant Formula had they known that these representations were not accurate. (*Id.* ¶ 67.) Based on these allegations, Plaintiffs have sufficiently alleged that they reasonably relied on Defendant's representations. *See Miller v. Samsung Elecs. Am., Inc.*, No. 14-CV-4076, 2015 WL 3965608, at *10–11 (D.N.J. June 29, 2015) (holding that the plaintiff sufficiently alleged reasonable reliance under Florida Statutes § 817.41, where the plaintiff alleged that he relied on the defendant's misrepresentation that the computer had a high-speed port in purchasing the defendant's computer); *Griswold v. Rogich*, 784 N.W.2d 183, 183 (Wis. Ct. App. 2010) (holding that the plaintiff's reliance was not unreasonable as a matter of law where the plaintiff, in purchasing a home, relied on the defendant's misrepresentation that the home's basement had never leaked and was not aware that basement had leaked in the past).

### iv. Damages

Defendant contends that Plaintiffs fail to plead damages with sufficient particularity.[25]

(Def. Mem. 16 (citing *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 438–39

(D.N.J. 2015)).) Defendant argues that Plaintiffs' allegations regarding damages are conclusory

because Plaintiffs have not alleged how much they would have paid for the Infant Formula

absent the representations and have failed to plead how much Defendant's competitors charge

for their formula. (*Id.*) Plaintiffs argue that they have sufficiently alleged "a price-premium . . .

theory of damages." (Pls. Opp'n 16.) Plaintiffs also argue that the court in *Riddell*, 77 F. Supp.

3d 422, a case relied on by Defendant, misapplied Florida law when it held that in order to

proceed on a price-premium theory, a plaintiff must quantify the exact premium. (*Id.* 16–17.)

"In order to assert a claim for damages under FDUTPA, a plaintiff must establish: (1) a

deceptive act or unfair practice, (2) causation, and (3) actual damages." *State v. Beach Blvd*

*Auto. Inc.*, 139 So. 3d 380, 393 (Fla. Dist. Ct. App. 2014) (citing *Baptist Hosp., Inc. v. Baker*,

84 So. 3d 1200, 1204 (Fla. Dist. Ct. App. 2012)). "FDUTPA damages are measured according

to 'the difference in the market value of the product or service in the condition in which it was

delivered and its market value in the condition in which it should have been delivered according

to the contract of the parties.'" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. May

---

[25] In support of its argument that Plaintiffs have not pled damages with particularity, Defendant relies on three District of New Jersey decisions. (*See* Def. Mem. 16 (citing *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 438–39 (D.N.J. 2015)); Def. Reply 7 (first citing *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, No. 14-CV-3722, 2015 WL 4591236, at *39 (D.N.J. July 29, 2015); and then citing *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. 2011)).) Two of the cases, *Riddell* and *Caterpillar*, decided whether plaintiffs had sufficiently pled the damages element of claims under the New Jersey Consumer Fraud Act and the FDUTPA. *See Caterpillar*, 2015 WL 4591236, at *39; *Riddell*, 77 F. Supp. 3d at 438–39. The third case, *Green*, discussed the damages requirement under the New Jersey Consumer Fraud Act. *Green*, 279 F.R.D. at 282. Because Defendant has not argued that Plaintiffs' claims fail to comply with Wisconsin law or Florida Statutes § 817.41, the Court construes Defendant's motion as only challenging Plaintiffs' FDUTPA damages claim.

17, 2016) (first quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984); and then citing *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 453 (5th Cir. 2001)).  A plaintiff may recover damages under the FDUTPA by alleging that the plaintiff "paid a price premium" for the allegedly deceptive product.  *Carriuolo*, 823 F.3d at 986 (citing *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282–83 (11th Cir. 2011)); *see also Fitzpatrick*, 635 F.3d at 1283 (stating that a plaintiff "would only need to show that he or she paid a premium for [the product at issue] to be entitled to damages under the FDUTPA"); *Moss v. Walgreen Co.*, 765 F. Supp. 2d 1363, 1367 (S.D. Fla. 2011) (stating that where a consumer pays "more for the product than she otherwise would have . . . the consumer suffers damages").

Plaintiffs allege that they paid a premium for the Infant Formula because of Defendant's false and misleading representations that the Infant Formula reduces the risk that infants will develop allergies and that the FDA endorsed Defendant's qualified health claim.  (Compl. ¶¶ 62, 65–67.)  Under the FDUPTA, these allegations are sufficient to plead damages.  *See Seidman v. Snack Factory, LLC*, No. 14-CV-62547, 2015 WL 1411878, at *4 (S.D. Fla. Mar. 26, 2015) ("[T]he Court concludes that it is plausible that falsely touting a product as 'all natural' would wrongfully raise demand for that product and, consequently, its price.  Precisely what damages — if any — that Plaintiff may be entitled to is a matter for another day." (citing *Bohlke v. Shearer's Foods, LLC*, No. 14-CV-80727, 2015 WL 249418, at *7 (S.D. Fla. Jan. 20, 2015))); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1348 (S.D. Fla. 2014) ("In light of the allegations in the Amended Complaint that the plaintiffs paid a premium price for Beck's based on the mistaken belief that it was an imported beer brewed in Germany, the Court finds that the plaintiffs have pled an actual harm resulting from the defendant's alleged misrepresentations concerning Beck's."); *Reilly v. Amy's Kitchen, Inc.*, No. 13-CV-21525, 2013 WL 9638985, at *6

(S.D. Fla. Dec. 9, 2013) ("[T]he Complaint alleges that Defendant misled consumers by failing to disclose that ECJ was actually sugar and, as a result, charged consumers a premium price for its products.  Based on these allegations, the Court declines to find that Plaintiff has failed to plead any facts regarding damages." (collecting cases)); *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1339–40 (S.D. Fla. 2009) (holding that the plaintiffs had sufficiently pled damages where the complaint alleged that "as a result of the [defendant's] misleading messages, [the defendant] ha[d] been able to charge a price premium for" the product at issue (citing *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 989–90 (Fla. Dist. Ct. App. 2004))); *Stires v. Carnival Corp.*, No. 02-CV-542, 2003 WL 21356781, at *2 (M.D. Fla. Jan. 2, 2003) ("Although [the plaintiff] did not specify the value of the cruise promised and the value of the cruise received, which is the proper measure of FDUPTA damages, she has complied with Federal Rules of Civil Procedure 8(a) and 9.  Read in the light most favorable to [the plaintiff], it cannot be said that she has failed to plead her claim with particularity.  Hence, dismissal is not warranted.").

In support of its argument that Plaintiffs have failed to sufficiently plead damages, Defendant relies on *Riddell*, which dismissed a FDUTPA claim for failure to sufficiently plead damages.[26]  (*Id.* (citing *Riddell*, 77 F. Supp. 3d at 438–39).)  In *Riddell*, the plaintiffs alleged that they each paid a premium price for the defendants' products but failed to "identify the specific price paid" for the defendants' products or the price of comparable products.  *Riddell*, 77 F. Supp. 3d at 438.  The court held that the plaintiffs failed to state a FDUTPA claim because the plaintiffs did not plead facts to show the difference in the market value between the product

---

[26]  Defendant also cites to *Caterpillar*, which was decided by the same judge who decided *Riddell* and relied on *Riddell* to reach the same conclusion regarding damages.  *See Caterpillar*, 2015 WL 4591236, at *39 (citing *Riddell*, 77 F. Supp. 3d at 439).

promised and the product received. *Id.* at 439 (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006)).

In deciding *Riddell*, the court relied on *Butland* for support in dismissing the plaintiffs' FDUTPA claim for failure to allege the price of comparable products. *Id.* at 439 (citing *Butland*, 951 So. 2d at 869). However, *Butland* does not support the holding in *Riddell*. In *Butland*, the lower court granted a class certification motion based on the plaintiffs' FDUTPA claim. *Butland*, 951 So. 2d at 867. In reversing the lower court's class certification order, the appellate court found that the plaintiffs failed to establish "class-wide proof of damages" because each consumer's damages for the defendant's unfair or deceptive acts would "vary widely" as the claims arose "in the context of a complex contractual relationship." *Id.* at 875–76. The Florida appeals court's holding in *Butland* does not support the conclusion that a FDUTPA claim requires a plaintiff to plead the price of comparable products in order seek damages under the FDUTPA. Rather, the court in *Butland* noted that it was "well-defined in the case law" that the measure of damages under FDUTPA "is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties" but did not state that a plaintiff must plead the price of comparable products. *See id.* at 869; *see also Seidman*, 2015 WL 1411878, at *4 (denying motion to dismiss and finding that the plaintiffs were not required to plead the exact value of the defendant's products and of comparable products); *Marty*, 43 F. Supp. 3d at 1346–48 (denying motion to dismiss and finding that the plaintiffs sufficiently pled damages where the plaintiffs alleged that they paid a premium for the defendant's product but did not allege the price paid or the price of comparable products); *Reilly*, 2013 WL 9638985, at *6 & n.2 (denying motion to dismiss and finding that plaintiffs sufficiently pled price-premium

damages where the plaintiffs did not plead the price of the defendant's product or of comparable products and noting that whether the plaintiff could "substantiate her allegations" regarding the premium price was a "factual issue more appropriate for resolution on a motion for summary judgment"); *Smith*, 663 F. Supp. 2d at 1339–40 (denying motion to dismiss and finding that the plaintiffs sufficiently pled damages where the plaintiffs alleged that the defendant charged a premium over comparable products but did not allege the price paid for the defendant's product or the price of the comparable products); *Stires*, 2003 WL 21356781, at *2 (denying motion to dismiss and finding that the plaintiff was not required to plead the value of the defendant's product and the value of comparable products). The court finds that Plaintiffs have sufficiently pled damages to state a claim under the FDUTPA.

The Court denies Defendant's motion to dismiss Plaintiffs' claims under the FDUTPA, Florida Statutes § 817.41 and Wisconsin Statutes §§ 895.446 and 943.20.

**III.  Conclusion**

For the foregoing reasons, the Court declines to dismiss or stay this matter pursuant to the primary jurisdiction doctrine and finds that Plaintiffs do not have standing to seek injunctive relief.  The Court grants Defendant's motion to dismiss Plaintiffs' claim under Wisconsin Statutes § 100.18 and denies Defendant's motion to dismiss Plaintiffs' claims under the FDUTPA, Florida Statutes § 817.41, Wisconsin Statutes § 100.20 and Wisconsin Statutes §§ 895.446 and 943.20.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  September 28, 2016
          Brooklyn, New York