# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

────────────────────

Nᵒˢ 15-CV-2995 (EK) (RER), 16-CV-1153 (EK) (RER), 17-CV-93 (EK) (RER)

────────────────────

JENNIFER HASEMANN, DEBBIE HOTH, CETARIA WILKERSON, AND WENDY MANEMEIT, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED

VERSUS

GERBER PRODUCTS CO., D/B/A NESTLÉ NUTRITION, NESTLÉ INFANT NUTRITION & NESTLÉ NUTRITION NORTH AMERICA

────────────────

**MEMORANDUM & ORDER**

December 5, 2022

────────────────

**RAMON E. REYES, JR., U.S.M.J.:**

In these consolidated class actions, Plaintiffs allege unfair trade practices and false advertising claims under Florida and New York law against Gerber Products Co., doing business as Nestlé Nutrition, Nestlé Infant Nutrition & Nestlé Nutrition North America ("Gerber" or "Defendant"), in connection with the advertising and marketing of Gerber's "Good Start Gentle" line of infant formula ("Good Start Gentle" or "GSG").[1] (*See* ECF No. 1 ("*Hasemann* Compl.") ¶¶ 2–3, 82–107; *Manemeit*, No. 17-CV-93, ECF No. 1 ("*Manemeit* Compl.") ¶¶ 2–3, 93–108).

─────────────────

[1] On February 8, 2017, the Court consolidated these three actions—*Hasemann v. Gerber Prods. Co.*, No. 15-CV-2995, *Greene v. Gerber Prods. Co.*, No. 16-CV-1153, and *Manemeit v. Gerber Prods. Co.*, No. 17-CV-93—for discovery and pretrial purposes. (Order dated 2/8/2017). For ease of reference, the Court refers to the *Hasemann* Plaintiffs (Jennifer Hasemann and Debbie Hoth), the remaining *Greene* Plaintiff (Cetaria Wilkerson), and the *Manemeit* Plaintiff (Wendy Manemeit) collectively as "Plaintiffs," and all citations to the docket refer to the *Hasemann* docket unless otherwise noted.

1

Before the Court is Gerber's letter Motion to Seal (ECF No. 191 ("Mot. to Seal")), which seeks to seal or redact certain submissions filed in connection with the Plaintiffs' Motion for Partial Summary Judgment and to Exclude Expert Testimony (ECF Nos. 182–83, 186) and Gerber's Motion for Summary Judgment and to Decertify the Class (ECF Nos. 181, 184–85) (collectively, the "Motions"). Specifically, Gerber seeks to seal or redact the parties' memoranda in support of and in opposition to the Motions, the parties' statements and counterstatements of fact, and more than two-thirds of the 231 exhibits submitted in connection with the Motions. The Honorable Eric R. Komitee referred the Motion to Seal to me on May 19, 2022. (Order dated 05/19/2022).[2]

After carefully reviewing the record, and for the reasons set forth herein, Defendant's Motion to Seal is denied.

## **BACKGROUND**

The Court assumes familiarity with the background of the case and Plaintiffs' allegations as set forth in detail in prior opinions of the Court. (*See, e.g.*, ECF No. 41; ECF No. 137). In sum, Plaintiffs allege unfair trade practices and false advertising claims under Florida and New York law, arguing that Gerber obtained a price premium by advertising and marketing GSG as "the first and only formula whose consumption reduces the risk of infants developing allergies" and "the first and only formula that the United States Food and Drug Administration ('FDA') endorses to reduce the risk of developing allergies." (*Hasemann* Compl. ¶¶ 2–3, 13, 15, 27–29, 43–51, 61–62, 66–67, 72, 75, 82–107; *Manemeit* Compl. ¶¶ 15, 72, 75, 93–108).

---

[2] "Pursuant to 28 U.S.C. § 636(b)(1)(A), magistrate judges have authority to decide non-dispositive pretrial matters, including motions to seal." *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15-CV-2926 (DRH) (SIL), 2019 WL 5694256, at *1 n.2 (E.D.N.Y. July 22, 2019) (citing *Grand v. Schwarz*, No. 15 Civ. 8779, 2018 WL 1604057, at *1, n.1 (S.D.N.Y. Mar. 28, 2018)), *adopted by* 2020 WL 1242616 (Mar. 16, 2020).

On March 31, 2019, the Court certified two subclasses comprised of "[a]ll persons who purchased Good Start Gentle infant formula in [Florida / New York] between October 10, 2011 and April 23, 2016." (ECF No. 137 at 72).[3] Following the close of discovery, the parties requested a pre-motion conference on their anticipated motions for summary judgment and on Gerber's anticipated motion to de-certify the class. (Order dated 8/16/2021; ECF No. 170–173). Judge Komitee held a pre-motion conference on the Motions and set a briefing schedule. (ECF No. 174; Order dated 3/30/2022).

On April 28, 2022, the parties jointly moved pursuant to Federal Rule of Civil Procedure 26(c) to file their submissions in support of and in opposition to the Motions under seal to preserve the confidentiality of "highly sensitive information concerning Gerber's marketing, pricing and sale of its Gerber Good Start infant formula product line[.]" (ECF No. 180 at 3). Judge Komitee granted the joint request in part, permitting the parties to provisionally file the documents under seal "*provided that* Gerber provides proposed redactions to the Court . . . and explains with particularity the commercial interests that would be damaged by the disclosure of specific information" such that the Court could properly assess the merits of the sealing application. (Order dated 4/29/2022) (emphasis added). In response to that Order, Gerber filed the instant letter Motion to Seal (Mot. to Seal), which seeks to seal or redact the parties' briefing papers, statements of fact, and exhibits filed in connection with the Motions (*see* ECF Nos. 181–186).

---

[3] "The [Florida / New York] Subclass excludes the judge or magistrate assigned to this case; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, legal representatives, successors, and assigns; persons who purchased Good Start infant formula for the purpose of resale; and any government or government entity participating in the WIC program. The term 'purchased' does not include formula received by a person via the WIC program." (ECF No. 137 at 72).

In support of the Motion to Seal, Gerber filed a declaration by its outside counsel, Geoffrey W. Castello, along with supporting exhibits (ECF No. 191-1 ("Castello Decl.")), and a declaration by its Vice President and General Counsel, Kevin L. Goldberg ("Goldberg") (ECF No. 192 ("Goldberg Decl."))[4] Gerber also submitted proposed redactions for the Court's review and has indicated those documents which it requests be sealed in their entirety. (*See* ECF Nos. 193-1 to 193-26 ("Proposed Def's Exhibits") (identifying Defendant's submissions and exhibits to be redacted or sealed); ECF Nos. 194-1 to 194-139 ("Proposed Pls' Exhibits") (identifying Plaintiffs' submissions and exhibits to be redacted or sealed))[5] Since filing the instant motion, Gerber has filed a supplemental declaration from Goldberg in support of the motion (ECF No. 199-1 ("Suppl. Goldberg Decl.")), has withdrawn certain proposed redactions (*see* ECF No. 199 at 3 n.1; ECF No. 200 at 1), and has filed revised proposed redactions to the parties' briefing papers, statements and counterstatements of facts, and expert reports (ECF Nos. 200-1 to 200-14). Plaintiffs oppose the Motion to Seal in its entirety. (*See* ECF No. 198 ("Pls' Opp."); ECF No. 201 ("Pls' Sur-reply")).

## <u>LEGAL STANDARD</u>

"Sealing documents filed with a court implicates [the] common law and [] qualified First Amendment right of access to such documents." *Trump v. Deutsche Bank AG*, 940 F.3d 146, 150

---

[4] Mr. Goldberg's declaration in support of the Motion to Seal was filed multiple times on the docket. (*See* ECF Nos. 192, 193 and 194). For ease of reference, the Court refers only to the first filed copy. (ECF No. 192).

[5] The Goldberg Declaration lists several documents as containing commercially sensitive information sufficient to overcome the presumption of public access which do not have corresponding submissions with proposed redactions or any indication that they should be sealed in their entirety. Specifically, Plaintiffs' Exhibits 8, 144, 145, 146, 147, 153, 154, 156 and 157 are listed (Goldberg Decl. ¶¶ 8, 11, 14, 17), but have no corresponding submission. Because Defendant has not specified the requested treatment for those documents, and because the Court cannot properly evaluate the merits of Defendant's request to seal or redact those exhibits, Gerber's motion to seal is denied as to those documents.

(2d Cir. 2019). Courts in the Second Circuit employ a three-part test to determine whether documents filed with a court must be made available to the public. *Alcon Vision, LLC v. Lens.com*, No. 18-CV-0407 (NG), 2020 WL 3791865, at *3 (E.D.N.Y. July 7, 2020). "First, the court determines whether the record at issue is a 'judicial document'—a document to which the presumption of public access attaches." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)). Second, the court must "determine the particular weight of that presumption of access for the record at issue." *Olson v. Major League Baseball*, 29 F.4th 59, 87 (2d Cir. 2022) (citing *Lugosch*, 435 F.3d at 119). "At this step, 'the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id.* at 87–88 (quoting *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1049 (2d Cir. 1995)). Third, "once the weight of the presumption has been assessed, the court is required to 'balance competing considerations against it.'" *Id.* at 88 (quoting *Amodeo II*, 71 F.3d at 1050). "Only when competing interests outweigh the presumption may access be denied." *United States v. Erie County, N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014) (citing *Lugosch*, 435 F.3d at 120).

"The presumption of access 'requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access.'" *Olson*, 29 F.4th at 88 (quoting *Newsday LLC v. County of Nassau*, 730 F.3d 156, 167 n.15 (2d Cir. 2013)); *see also Brown v. Maxwell*, 929 F.3d 41, 47–48 (2d Cir. 2019) (quoting *Lugosch*, 435 F.3d at 124) (finding legal error where, before sealing, the district court "failed to review the documents individually and produce 'specific, on-the-record findings that sealing is necessary to preserve higher values.'"); *P&L Dev., LLC v. Gerber Prods. Co.*, No. 21-CV-5382 (MKB) (AYS), 2022 WL 94380, at *3 (E.D.N.Y. Jan. 10,

5

2022) (emphasis added) ("Before shielding a document from the public docket . . . the Court must find, *particularly*, that the claimed interest in sealing is outweighed by the public's right to access."); *Saint-Jean v. Emigrant Mortg. Co.*, No. 11-CV-2122 (SJ), 2016 WL 11430775, at *3 (E.D.N.Y. May 24, 2016)) (internal quotation marks omitted) (quoting *Mariano v. La Fitness, Inc.*, No. 09-CV-1395 (LDW) (ETB), 2010 WL 1459383, at *1 (E.D.N.Y. Apr. 13, 2010)) ("In applying the presumption of access, 'a judge must carefully and skeptically review sealing requests to [e]nsure that there really is an extraordinary circumstance or compelling need for the request.'"). "The party seeking to place the judicial documents under seal bears the burden of overcoming the presumption of public access." *Rogers v. Henry*, No. 16-CV-5271 (KAM) (VMS), 2017 WL 5495805, at *5 (E.D.N.Y. Sept. 12, 2017); *see also P&L Dev., LLC*, 2022 WL 94380, at *3 (citing *Sylvania v. Ledvance*, No. 20 Civ. 9858 (RA), 2021 WL 412241, at *2 (S.D.N.Y. Feb. 5, 2021); *Alcon Vision*, 2020 WL 3791865, at *6) ("The party seeking sealing bears the burden of showing that the confidential business interests of its client outweigh the public's right to understand . . . the reason why the Court takes any action[.]").

"[S]ealing should be 'narrowly tailored,' and redacting sensitive information is a preferable alternative to sealing an entire document." *Valassis Commc'ns, Inc. v. News Corp.*, No. 17 Civ. 7378 (PKC), 2020 WL 2190708, at *1 (S.D.N.Y. May 5, 2020) (quoting *Lugosch*, 435 F.3d at 124; citing *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008)); *see also Automated Mgmt. Sys., Inc. v. Rappaport Hertz Cherson Rosenthal, P.C.,* No. 16 Civ. 4762 (LTS) (KNF), 2022 WL 1450737, at *2 (S.D.N.Y. May 9, 2022) (quoting *SEC v. Telegram Grp. Inc.*, No. 19 Civ. 9439 (PKC), 2020 WL 3264264, at *1–2 (S.D.N.Y. Jun. 17, 2020)) ("[T]he Court should consider whether the sealing request is 'narrowly tailored' to protect these higher values, and whether the proposed redactions are overly broad."). Finally, "[a]ny countervailing privacy interest . . . cannot defeat the strong

presumption of public disclosure where the material [sought to be sealed] is already in the public domain." *JetBlue Airways Corp. v. Helferich Pat. Licensing, LLC*, 960 F. Supp. 2d 383, 397 (E.D.N.Y. 2013); *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("The genie is out of the bottle . . . . We have not the means to put the genie back.").

## **DISCUSSION**

I. Judicial Documents and the Presumption of Public Access

"[A] document filed with the court is a judicial document 'if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision.'" *Olson*, 29 F.4th at 89 (quoting *Brown*, 929 F.3d at 49); *see also Bredehorn v. Young*, No. 19-CV-1010 (SJF) (AKT), 2020 WL 2042391, at *2 (E.D.N.Y. Apr. 28, 2020) (internal quotation marks and citations omitted) ("Documents filed as exhibits to motions or as attachments to letters filed with the Court seeking some type of judicial action are, in fact, judicial documents."). In particular, "documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Lugosch*, 435 F.3d at 121; *see also Olson*, 29 F.4th at 90 (citing *Brown*, 929 F.3d at 50) ("A strong presumption attaches to materials filed in connection with dispositive motions, such as a motion to dismiss or a summary judgment motion."); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (quoting *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982)) ("[A] report submitted to a court in connection with a summary-judgment motion is entitled to a strong presumption of access. Since such a document 'is the basis for the adjudication, only the most compelling reasons can justify' sealing.").

Applying these standards, the documents Gerber seeks to seal or redact—documents submitted to the Court in connection with the parties' motions for summary judgment—are unquestionably judicial documents entitled to the strongest presumption of public access. That the underlying records were submitted in part to support or oppose the parties' non-dispositive requests for class decertification and for the exclusion of expert testimony does not alter this conclusion. Indeed, other courts in this Circuit have found that "in the context of a class action alleging deceptive advertising about a consumer good, there is a strong presumption of public access to the documents filed in support of the parties' briefs." *Allegra v. Luxottica Retail N. Am.,* No. 17-CV-5216 (PKC) (RLM), 2021 WL 4799032, at *2 (E.D.N.Y. Oct. 14, 2021); *see also Grayson v. Gen. Elec. Co.*, No. 13-CV-1799 (WWE), 2017 WL 923907, at *1 (D. Conn. Mar. 7, 2017) (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016)) ("Class actions are by definition of public interest because some members of the public are members of the case, [thus] 'the standards for denying public access to the record' should [ ] be strictly construed.").

Accordingly, the documents at issue here are judicial documents to which the strongest presumption of public access attaches.

II.    <u>Balancing Competing Considerations</u>

"[W]here the presumption of public access is at its strongest, as it is here . . . the presumption can be overcome only by countervailing considerations in 'extraordinary circumstances.'" *Olson*, 29 F.4th at 93 (quoting *Amodeo II*, 71 F.3d at 1048). Such "countervailing considerations . . . may include, among others . . . 'the privacy interests of those resisting disclosure,'" *Olson*, 29 F.4th at 88 (quoting *Mirlis*, 952 F.3d at 59), which in turn may include "trade secrets and sources of business information that might harm a litigant's competitive standing." *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 154–55 (S.D.N.Y. 2015) (citing *In re Parmalat Sec.*

*Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)); *see also Kewazinga Corp. v. Microsoft Corp.*, No. 18 Civ. 4500 (GHW), 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (quoting *Lexington Furniture Indus., Inc. v. Lexington Co., AB*, No. 19 Civ. 6239 (PKC), 2021 WL 1143694, at *2 (S.D.N.Y. Mar. 24, 2021)) ("The demonstration of a valid need to protect the confidentiality of confidential and proprietary business information may be a legitimate basis to rebut the public's presumption of access to judicial documents."). "Examples of commonly sealed documents include those containing 'trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like.'" *Kewazinga Corp.*, 2021 WL 1222122, at *6 (quoting *Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 505 (E.D.N.Y. 1999)).[6]

To demonstrate extraordinary circumstances warranting the sealing of such documents, "[t]he party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *In re Parmalat*, 258 F.R.D. at 244 (citations omitted); *see also Encyclopedia Brown Prods., Ltd. v. Home Box Off., Inc.*, 26 F. Supp. 2d 606, 613 (S.D.N.Y. 1998) (internal quotations and citations omitted) ("With respect to proof of competitive harm, vague and conclusory allegations will not suffice. Movant must prove that disclosure would work a clearly defined and very serious injury.").

---

[6] Because Gerber does not specifically argue than any information should be sealed or redacted because it constitutes a "trade secret," the Court will not consider whether that legal definition is satisfied. *See Dawson v. Merck & Co.*, No. 12-CV-1876 (BMC) (PK), 2021 WL 242148, at *7 n.2 (E.D.N.Y. Jan. 24, 2021) ("Defendants make only passing references to trade secrets, and do not make any specific arguments that any of the Documents constitute trade secrets . . . . Accordingly, there is no need for the Court to consider whether any of the Documents constitutes a trade secret."); *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441 (HG) (TAM), 2022 WL 3347219, at *3 (E.D.N.Y. Aug. 12, 2022) (citing *Cuno Inc. v. Pall Corp.*, 117 F.R.D. 506, 508 (E.D.N.Y. 1987)) ("[T]he party seeking protection for alleged trade secrets bears the burden of demonstrating good cause for such a classification.").

Although "[c]ommercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts," *Amodeo II*, 71 F.3d 1051, "[c]ompetitive harm should not be taken to mean simply any injury to competitive position, as might flow . . . from embarrassing publicity attendant upon public revelations." *Alcon Vision*, 2020 WL 3791865, at *9 (quoting *Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-CV-5023 (CBA), 2010 WL 889799, at *6 (E.D.N.Y. Mar. 8, 2010)); *see also Lugosch*, 435 F.3d at 123 n.5 (quoting *Brown & Williamson Tobacco v. Fed. Trade Comm'n*, 710 F.2d 1165, 1180 (6th Cir. 1983)) ("The natural desire of parties to shield prejudicial information contained in judicial records from competitors and the public . . . cannot be accommodated by the courts without seriously undermining the tradition of an open judicial system."). And while "[c]onfidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit," *Encyclopedia Brown*, 26 F. Supp. 2d at 614, "[s]tale business records cannot support the necessary finding of harm, and therefore cannot overcome the public's strong interest in disclosure." *Allegra*, 2021 WL 4799032, at *4 (quoting *Dawson v. Merck & Co.*, No. 12-CV-1876 (BMC) (PK), 2021 WL 242148, at *8 (E.D.N.Y. Jan. 24, 2021)). "While a document's age is a strong indicator of staleness, a party seeking to keep a document under seal may nevertheless show that the information is not stale with a particularized showing of harm from disclosure." *Dawson*, 2021 WL 242148, at *8 (internal citations omitted); *see also Koch v. Greenberg*, No. 07 Civ. 9600 (BSJ) (DF), 2012 WL 1449186, at *4 (S.D.N.Y. Apr. 13, 2012) ("Generally . . . a court will not protect several-year-old information without a specific explanation of the harm that would be caused by disclosure."). Such a particularized showing requires that "the party must cite to 'specific information contained in the documents that would cause [harm] if it

were disclosed today.'" *Dawson*, 2021 WL 242148, at *8 (alteration in original) (quoting *In re Parmalat*, 258 F.R.D. at 256).

Gerber seeks to seal or redact "the parties' memoranda of law, statements and counterstatements of undisputed material facts, and a substantial number of [the] exhibits" submitted in connection with the Motions, which it argues "reflect and/or discuss Gerber's confidential and proprietary business information." (Goldberg Decl. ¶ 1; *see also* Mot. to Seal at 1–2). According to Goldberg, this information is kept confidential among its employees and outside contractors, is kept entirely shielded from competitors and the general public, and, if disclosed, would injure its "business interests and standing in the marketplace by giving Gerber's competitors access to information that they would not otherwise have." (Goldberg Decl. ¶¶ 3–4; *see also* Suppl. Goldberg Decl. ¶¶ 4, 6, 8, 11)). In particular, Gerber points to four categories of "confidential and proprietary business information" that it argues warrant restrictions from public access: documents concerning Gerber's (1) pricing and sales strategy; (2) regulatory strategy; (3) medical research and scientific strategy; and (4) marketing strategy. (Mot. to Seal at 2–4; Goldberg Decl. ¶¶ 2, 7).

A. Pricing and Sales Strategy

With respect to the first category, Gerber seeks to seal or redact documents that "contain information relating to Gerber's pricing and sales strategy for its infant formula products." (Goldberg Decl. ¶ 8).[7] Gerber describes the information in these documents as "not limited to the

---

[7] In addition to the parties' briefing and statements and counterstatements of undisputed material facts, Gerber seeks to seal or redact 73 exhibits that purportedly contain confidential pricing information and sales strategy: Gerber's Exhibits 4–9, 12–18, 27, 29, 34, 35, and 40, and Plaintiffs' Exhibits 5, 21, 68, 69, 75, 76, 78, 79, 85, 87, 88–90, 92, 93, 96–103, 108, 109, 111, 113–23, 125, 127, 128, 130–34, 140, 141, 148, 156, 157, 165, 166, 167, 171, and 183. (Goldberg Decl. ¶ 8). Of the 73 exhibits, Gerber seeks to seal 31 exhibits in their entirety, and proposes redactions to 40 exhibits (*See* Proposed Def's Exhibits; Proposed Pls' Exhibits). Gerber did not specify the treatment that it seeks for the remaining two documents that purportedly fall into this category—Plaintiffs' Exhibits 156 and 157—as those exhibits were omitted from its proposed exhibit submissions.

Good Start Gentle products at issue in this litigation but rather concerns pricing across Gerber's entire infant formula and baby food product lines" and notes that it includes "Gerber's wholesale pricing strategy, suggested retail pricing strategy, Gerber's sales revenue, production costs, market share, and future sales and growth projections." (Goldberg Decl. ¶ 9). Gerber submits that "[d]isclosure of this information would reveal to Gerber's competitors Gerber's pricing and sales strategies across many of its product lines, including how Gerber sets its prices," that "Gerber's competitors would not otherwise have access to" this information, and that its disclosure "would harm Gerber's competitive position in the marketplace." (Goldberg Decl. ¶ 10; *see also* Mot. to Seal at 3).

Plaintiffs argue that the information Gerber seeks to protect is stale, as it relates to years-old strategies that have already been implemented and concerns pricing responses to an old marketing campaign, and that the strategies at issue are not proprietary, as retailers and consumers were aware of the price increases, and retailers were told that allergy claims would support those increases. (Pls' Opp. at 3). More importantly, Plaintiffs also argue that "Gerber never provides a particularized showing of harm," and that the bare assertion that pricing information is otherwise kept secret from competitors is insufficient by itself to warrant protection. (Pls' Opp. at 3; *see also* Pls' Sur-reply at 2). In response, Gerber notes that the information remains "in use today," as "Gerber still employs the nonpublic strategies" reflected in the exhibits (Def's Reply at 3 (citing Suppl. Goldberg Decl. ¶¶ 2–3, 5, 8–9), that the exhibits contain pricing information regarding "other infant formula products and unrelated products such as baby food, which are not at issue in this action" (Def's Reply at 3 (citing Pls' Exs. 12, 14, 18, 35, 68, 87, 92)),[8] and that the exhibits

---

[8] Although Defendant cites to Plaintiffs' Exhibits 12, 14 18, and 35 to support this proposition, the Court notes that those three exhibits are not included among those that Gerber asserts contain pricing information (*See* Goldberg Decl.

"discuss all aspects of Gerber's pricing strategy, including wholesale and retail pricing strategy, price changes that were contemplated but never implemented, production costs, the various factors that Gerber considered when making pricing decisions, profit information, and future sales and growth projections." (Def's Reply at 3–4 (citing Pls' Exs. 14, 35, 68, 79).

The Court agrees with Plaintiffs that Gerber has not made the particularized showing of harm needed to overcome the strong presumption of access to these documents. After identifying the documents that contain pricing and sales strategy information (Goldberg Decl. ¶ 8) and describing the information contained within the documents at issue (*id.* ¶ 9), Mr. Goldberg's declarations indicate only that disclosure of pricing and sales strategies would reveal that information to Gerber's competitors and would therefore work some unspecified competitive harm (Goldberg Decl. ¶¶ 4, 10; Suppl. Goldberg Decl. ¶¶ 4). Gerber more fully describes that harm in its motion as its competitors' "open access to [its] pricing and sales strategies" and "insight into how [it] sets its prices." (Mot. to Seal at 3). Though Gerber characterizes these harms as "straightforward," their argument is circular: that Gerber's competitors are included among the members of the public that will have "open access" to unsealed judicial documents is not in itself a competitive harm. *See King Pharms., Inc. v. Eon Labs, Inc.*, No. 04-CV-5540 (DGT), 2010 WL 3924689, at *11 (E.D.N.Y. Sept. 28, 2010) (quoting *Forst v. Smithkline Beecham Corp.*, 639 F. Supp. 2d 948, 957 (E.D. Wis. 2009)) (alterations omitted) ("That these excerpts may 'provide insight into Elan's internal decision-making does not explain how competitors can obtain economic value from this information.'").

---

¶ 8); indeed, Plaintiffs' Exhibits 12, 18, and 35 are not included among the exhibits that Gerber seeks to seal or redact at all. (*See* Goldberg Decl. ¶¶ 8, 11, 14, 17; Proposed Pls' Exhibits).

Beyond conclusory assertions that disclosure would give competitors access to the documents, and therefore would cause competitive harm, Goldberg's declarations do not explain how Gerber's competitors would use the disclosed pricing and sales information to their own advantage, or to Gerber's disadvantage. Accordingly, Gerber has not satisfied its burden to "prove that disclosure would work a clearly defined and very serious injury." *Encyclopedia Brown*, 26 F. Supp. 2d at 613; *see also Allegra*, 2021 WL 4799032, at *5 ("[Declarant] does not provide specific facts or a particularized explanation of how this information could be capitalized on by [defendant's] competitors more than a decade after [the product's] launch to harm [defendant]. For that reason, LensCrafters cannot overcome the public's strong interest in disclosure."); *Tropical Sails Corp. v. Yext, Inc.*, No. 14 Civ. 7582, 2016 WL 1451548, at *4 (S.D.N.Y. Apr. 12, 2016) (internal citations, quotation marks, and alterations omitted) ("[C]ounsel makes only the broad allegation of general harm that public disclosure would raise a substantial risk of harm . . . since competitors would have access to [defendant's] confidential sales information. Counsel fails to provide either specific examples how, or articulated reasons why, such access would harm [defendant]. Absent such a showing, [defendant] has not met its burden[.]"); *Wells Fargo Bank, N.A. v. Wales LLC*, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014) (finding declaration generally asserting that harm to competitive business interests would result from disclosure of proprietary and sensitive information "provides no insight into, *inter alia*, how disclosure . . . would cause competitive harm to [the company] or its corporate affiliates[.]"). *Cf. Banco Santander (Brasil), S.A. v. Am. Airlines, Inc.*, No. 20-CV-3098 (RPK) (RER), 2020 WL 4926271, at *3–4 (E.D.N.Y. Aug. 21, 2020) (finding defendant had "not merely asserted that disclosure will work some unspecified harm on its business" but "clearly articulat[ed] how disclosure could advantage its counterparties and competitors" where declarant averred that disclosing the price terms of an agreement would

provide other counterparties with leverage to demand similar terms in anticipated future contract negotiations that were central to the defendant's business model, and would therefore make it difficult to negotiate favorable terms moving forward).

Plaintiffs' staleness argument is also well-taken. Although Gerber responded that "current pricing strategies are informed by similar considerations as they were during the Class period" and that the information "remains relevant to its current competitive position in the marketplace" (Suppl. Goldberg Decl. ¶¶ 3–4), it has not identified with any particularity the economic advantage that a competitor could gain from information related to strategies that have already been implemented or abandoned, from historical cost, revenue, profit and market share data, and from documents that are at least six years old, with some documents dating back as early as 2008 (*see* Pls' Exs. 85, 132 (ECF Nos. 194-52, 194-99)); *see also Alcon Vision*, 2020 WL 3791865, at *8 ("Even if the 'go-to-market and pricing strategies' from past years are still in use by Alcon, its competitors have seen those policies implemented over the ensuing years, rendering the commercial information at issue less than 'sensitive.'"). Gerber's categorization of the documents and broad reference to their continued relevance falls short of its burden to "cite to 'specific information contained in the documents that would cause [harm] if it were disclosed today.'" *Dawson*, 2021 WL 242148, at *8 (alteration in original) (quoting *In re Parmalat*, 258 F.R.D. at 256).

Accordingly, Gerber has not satisfied its burden to overcome the strong presumption of public access to the documents in this category. Gerber's request to seal or redact documents containing pricing and sales strategy information is denied.

B.  <u>Regulatory Affairs and Regulatory Process</u>

Next, Gerber seeks to seal or redact documents that "contain information relating to Gerber's internal regulatory affairs department." (Goldberg Decl. ¶ 11; *see also* Mot. to Seal at 3).[9] According to Gerber, "[t]hese documents show the internal workings of Gerber's regulatory process including, but not limited to, its interpretation of various regulatory requirements and compliance strategies, its petition for qualified health claims, including the one at issue in this litigation, and communications with regulatory agencies regarding the same." (Goldberg Decl. ¶ 12). Gerber argues that this information is not typically available to the public or to its competitors, and that "its release would harm Gerber's competitive position in the marketplace." (Goldberg Decl. ¶ 13).

Plaintiffs argue that disclosure of the regulatory information contained in the documents does not pose a current competitive risk to Gerber because it "concerns Gerber's [qualified health claim] efforts, which began [nineteen] years ago[,] . . . concluded [thirteen] years ago," and is not the subject of a current regulatory strategy, and because "Gerber has already withheld or redacted any privileged regulatory-related material." (Pls' Opp. at 3–4; *see also* Mot. to Seal at 4 n.1 (explaining some documents contain redactions that have already been applied to protect attorney-client or work product privilege)). However, Gerber responds that while it "is not seeking to seal its prior applications" to the FDA, the "internal regulatory and compliance strategies" implicated by the documents in question "cover a broad range of internal regulatory analysis and

---

[9] In addition to the parties' briefing and statements and counterstatements of undisputed material facts, Gerber seeks to seal or redact 16 exhibits that purportedly contain information regarding its internal regulatory affairs process: Gerber's Exhibit 37, and Plaintiffs' Exhibits 3, 8, 24, 34, 42–44, 49, 53, 60, 62, 63, 65, 180, and 185. (Goldberg Decl. ¶ 11). Of the 16 exhibits, Gerber seeks to seal four exhibits in their entirety, and proposes redactions to eleven exhibits. (*See* Proposed Def's Exhibits; Proposed Pls' Exhibits). Gerber did not specify the treatment that it seeks for one document that purportedly falls into this category—Plaintiffs' Exhibit 8—which is discussed in more detail below.

deliberations . . . relat[ing] to labeling, advertising, and other topics." (Def's Reply at 4 (citing Pls' Ex. 3, 34, 42, 43, 185)). According to Gerber, its "internal, confidential deliberative process involving its regulatory compliance is non-public business information that should be sealed." (Def's Reply at 4).

Again, Gerber's conclusory assertions of unspecified competitive harm that would result from disclosing its "internal regulatory decision-making process" and its communications with regulators (Goldberg Decl. ¶ 13; Suppl. Goldberg Decl. ¶ 6; Mot. to Seal at 3) do not explain how its competitors would use that information to their own benefit or to Gerber's detriment, and therefore are not sufficient to restrict public access to these documents. *See King Pharms., Inc.*, 2010 WL 3924689, at *8 ("[J]udicial precedent does not afford blanket protection against disclosure of communications with the FDA. Instead, each case turns on its particular facts, and a court will order sealing only where the party resisting disclosure has made a particularized showing of harm that would result from revealing trade secrets.").

Notably, Gerber cites just one case to support sealing regulatory documents. (Mot. to Seal at 3 (citing *In re Incretin-Based Therapies Prod. Liab. Litig.*, No. 13-MD-2452, 2021 WL 873290, at *2 (S.D. Cal. Mar. 9, 2021)). That case concerned a partially contested motion to seal in a multi-defendant case, where the "[d]efendants [we]re avid competitors of each other and of other companies in the highly competitive pharmaceutical industry for diabetes medicines," the sealing of "internal regulatory and safety analyses, and confidential regulatory strategies and communications" was uncontested, and the contested documents concerned unpublished, proprietary medical research and data which, if disclosed, could cause significant competitive harm and could confuse or mislead the public about the safety of the proprietary drugs at issue. *In re Incretin*, 2021 WL 873290, at *2–3. Such significant competitive harm from disclosure has not

been specifically articulated in this single-defendant case, and no additional harm to public health or safety has been alleged or identified.

Plaintiffs' additional arguments with respect to this category are also well taken. Without a particularized showing of ongoing competitive harm, it is unclear how a competitor might use the information from the documents in this category to its own advantage, as the documents are dated between 2008 and 2015 and were, in certain cases, previously produced with privilege redactions already in place. *See Dawson*, 2021 WL 242148, at *8, *10 (E.D.N.Y. Jan. 24, 2021) (unsealing eleven year old "highly proprietary" risk assessment document where "[d]efendants do not explain what internal process is revealed in the document or how such information is unique" and unsealing stale email and PowerPoint presentations containing defendant's "proprietary process for communicating with regulatory agencies" where the "suggestion of ongoing harm is not persuasive" and where the slides "do not reveal unique or highly unusual methods or procedures").[10]

Finally, that the information Gerber seeks to conceal concerns "not only Gerber's qualified health claim strategies but also its strategies relating to labeling, advertising, and other topics" (Def's Reply at 4 (citing Pls' Ex. 3, 34, 42, 43, 185)) does not help Gerber's position: those

---

[10] Further, like in *Dawson*, the information that Gerber seeks to protect does not appear to be "unique" or "unusual" in certain instances, such that the protection it seeks is not always narrowly tailored. For example, Gerber seeks to seal in full an undated PowerPoint presentation at Plaintiffs' Exhibit 3, including portions that simply unpack the abbreviations of "FDA," "FTC," and "AGs," and explain in broad terms the role of those agencies and of states' attorneys general as industry regulators. (ECF No. 194-5). Gerber also seeks to redact portions of a 2011 guidance document concerning qualified health claims at Plaintiff's Exhibit 42 that summarize and reprint excerpts from a publicly available warning letter issued by the FDA against a different company for a different product. *Compare* (ECF No. 194-19) *with* U.S. Food & Drug Admin., Warning Letter to General Mills, Inc. (May 5, 2009), https://web.archive.org/web/20090606165753/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm162943.htm. Indeed, Gerber's overinclusive approach to redactions renders Plaintiffs' Exhibit 42 effectively sealed, as Gerber proposes to redact all of the text on the page except for the date and title of the document, confidentiality designations, and Bates stamps. (*See* ECF No. 194-19). Though not all the proposed exhibits in this category contain this sort of common knowledge or otherwise publicly available documents, Gerber should take care to propose redactions only of information that truly warrants protection if they seek leave to renew their Motion to Seal.

18

enumerated topics are closely related to one another and go to the heart of this litigation, which centers around Plaintiffs' allegations that they were misled by improper labeling and advertising. Accordingly, those documents are important for the Court's consideration, and the public has a particularly strong interest in access to them. *See, e.g.*, *Allegra*, 2021 WL 4799032, at *5 ("The public's interest in this email is especially strong as it contains statements that also go to the heart of the case, namely whether [defendant's] representations . . . were deceptive."); *see also P&L Dev., LLC v. Gerber Prods. Co.*, No. 21-CV-5382 (MKB) (AYS), 2022 WL 1441999, at *6 (E.D.N.Y. May 6, 2022) (public interest in disclosure outweighed private business interests where the information to be sealed was "at the very heart of this litigation," was "crucial to the District Court's determination of the pending motions . . . and [wa]s likewise integral to the public's understanding of that determination.").

Accordingly, Gerber has not satisfied its burden to overcome the strong presumption in favor of public access to the documents in this category. Gerber's request to seal or redact documents concerning its regulatory affairs and regulatory process is denied.

C.  <u>Medical Affairs</u>

Next, Gerber seeks to seal or redact documents containing "information relating to Gerber's proprietary medical affairs department." (Goldberg Decl. ¶ 14; *see also* Mot. to Seal at 3).[11] According to Gerber, these documents

> contain the details of Gerber's proprietary infant-formula formulations, Gerber's internal interpretation of various scientific principles and data, the scientific assessment of various studies relating to those formulas, the development of and

---

[11] In addition to the parties' briefing and statements and counterstatements of undisputed material facts, Gerber seeks to seal or redact 24 exhibits that purportedly contain information regarding its medical affairs department: Plaintiffs' Exhibits 1, 14, 24, 44, 49, 51, 53, 57, 58, 60, 82, 126, 135, 139, 144–46, 152, 161, 163, 170, 175, 180, and 182. (Goldberg Decl. ¶ 14). Of the 24 exhibits, Gerber seeks to seal eight exhibits in their entirety, and proposes redactions to 13 exhibits. (*See* Proposed Def's Exhibits; Proposed Pls' Exhibits). Gerber did not specify the treatment that it seeks for the remaining three documents that purportedly fall into this category—Plaintiffs' Exhibits 144, 145 and 146.

support for the qualified health claim at issue in this litigation, scientific directives on how to interpret qualified health claims, and scientific assessment of other infant formula products available on the market.

(Goldberg Decl. ¶ 15). Gerber asserts that disclosure "would reveal to Gerber's competitors the details of Gerber's scientific research and development" and would cause competitive harm. (Goldberg Decl. ¶ 16).

Plaintiffs argue that the underlying scientific studies and the interpretations of those studies "are all several years old," relate to Gerber's since-discontinued allergy claims, and reflect Gerber's longstanding, publicly-disclosed position regarding the positive results of those studies such that disclosure poses no current competitive risk. (Pls' Opp. at 4). Plaintiffs further argue that Gerber is using competitive sensitivity as pretext to block the public from reviewing "embarrassing and inculpatory" documents where it admits that the studies "actually 'disproved' its allergy claim." (Pls' Opp. at 4). Finally, Plaintiffs argue that the documents do not disclose secret information regarding GSG's formulation, but reflect only the highly-marketed fact that GSG is made with partially hydrolyzed whey protein. (Pls' Opp. at 4). Defendant replies that Plaintiffs' arguments ignore "Gerber's competitively sensitive research and development information" by focusing only on the staleness of the studies and ignoring "the documents that discuss potential new products in development . . . documents that compare GSG's formulation to other formulas, . . . or documents that contain medical research that Gerber commissioned[.]" (Def's Reply at 4 (citing Pls' Ex. 135, 139, 161, 170, 182)).

Again, Gerber falls short of its burden with respect to these documents. As with the prior categories, Goldberg's assertion that disclosure "would reveal to Gerber's competitors the details of Gerber's scientific research and development" does not explain how its "release would harm Gerber's competitive position in the marketplace" beyond the fact that "Gerber's competitors

20

would not otherwise have access to" the information. (Goldberg Decl. ¶ 16). Goldberg's assertion that the "information remains confidential and competitively sensitive today" likewise does not sufficiently articulate a particularized ongoing harm (Suppl. Goldberg Decl. ¶ 8), and while Gerber's unsworn argument provides additional details regarding the nature of the information contained within the documents (Def's Reply at 4), it still does not explain how a competitor could leverage that information to its own advantage. *See King Pharms., Inc.*, 2010 WL 3924689, at *12 (denying request for continued sealing of "confidential research information regarding [drug] development" and "confidential information of a technical nature," including documents describing the movant's "decision to conduct a [scientific] study; the results of that study . . . internal communications regarding a review of clinical studies that had already been conducted; and other evidence regarding [movant's] awareness of prior research" where such technical information was previously discussed in promotional materials and in prior judicial opinions, and where movant failed to demonstrate that disclosure of the information would competitively injure the company). *Cf. Allegra*, 2021 WL 4799032, at *3 (internal quotation marks and citations omitted) (finding that defendant overcame strong presumption of public access with respect to proprietary technical information where its Director of Engineering submitted a declaration indicating that disclosure of specific manufacturing standards and instructions could be used by competitors "to alter and improve their own manufacturing processes and derive a competitive advantage against [defendant].").

Accordingly, Gerber has not satisfied its burden to overcome the strong presumption in favor of public access to the documents in this category. Gerber's request to seal or redact documents concerning its medical affairs is denied.

D.  Marketing Strategy and Consumer Research

Finally, Gerber seeks to seal or redact a fourth category of documents containing "information relating to Gerber's marketing strategy and consumer research." (Goldberg Decl. ¶ 17; *see also* Mot. to Seal at 4).[12] Gerber asserts:

> These documents show Gerber's marketing strategies and goals, its assessment of the infant-formula market, how Gerber developed and approved its consumer advertising and marketing claims across its line of products, Gerber's dissemination strategy for consumer-facing marketing materials, Gerber's strategy for marketing its products to healthcare professionals, consumer reaction to Gerber's advertising, the consumer research that it relied upon, Gerber's sales trends, and its marketing and advertising budgets and targeting.

(Goldberg Decl. ¶ 18). Defendant notes that "many of these documents reflect and/or discuss Gerber's marketing strategy extending beyond Good Start Gentle to other infant formula products and even to Gerber's other product lines, such as its baby food products." (*Id.*). Accordingly, it argues that disclosure of this otherwise private information would give "competitors a roadmap to Gerber's consumer-facing strategies" and would cause competitive harm. (*Id.* ¶ 19). Further, Gerber argues that it "still employs several of the marketing strategies that are discussed in the exhibits" and "uses many of the same targeting and dissemination strategies" such that disclosure would provide its "competitors with insight into Gerber's current marketing strategies and practices." (Suppl. Goldberg Decl. ¶¶ 9–10).

Plaintiffs argue that "decade-old discussions of an allergy claim that Gerber already ran and discontinued don't pose a current competitive threat to the company," that documents reflecting

---

[12] In addition to the parties' briefing and statements and counterstatements of undisputed material facts, Gerber seeks to seal or redact 111 exhibits that purportedly contain information regarding its marketing strategy: Gerber's Exhibits 5–7, 11, 13, and 33, and Plaintiffs' Exhibits 1–3, 6, 7, 9, 13, 16, 21–23, 33, 34, 42–47, 50–54, 57, 58, 60, 62–68, 70, 71, 75, 78, 79, 80–83, 85, 86, 88, 91–94, 100, 101, 103–10, 112–14, 117, 123, 125–27, 131–35, 139, 141, 144–48, 152, 153, 154, 157, 158, 160–64, 166–70, 172, 173, 175, 176, 179, 182, 184–86, and 189. (Goldberg Decl. ¶ 17). Of the 111 exhibits, Gerber seeks to seal 32 exhibits in their entirety, and proposes redactions to 72 exhibits. (*See* Proposed Def's Exhibits; Proposed Pls' Exhibits). Gerber did not specify the treatment that it seeks for the remaining seven documents that purportedly fall into this category—Plaintiffs' Exhibits 144, 145, 146, 147, 153, 154, and 157.

internal concerns that "allergy ads will confuse consumers or are otherwise inaccurate" are "embarrassing, not commercially sensitive," and that Gerber merely indicates that the documents are marketing documents without specifically explaining "how disclosure will harm the company." (Pls' Opp. at 4). Defendant replies that its discontinued allergy campaign "was only one component of Gerber's marketing strategy," and that the exhibits "detail Gerber's consumer-facing and medical marketing strategies more broadly," including "consumer research . . . relating to a wide range of consumer preferences and potential advertising campaigns beyond the so-called allergy campaign." (Def's Reply at 4 (citing Pls' Exs. 80, 82, 163, 170, 175)).

Again, Gerber summarizes the information that falls into this category, but fails to specifically articulate how disclosing that information will harm the company or benefit competitors. Though unlike other categories Gerber's argument with respect to marketing materials reaches beyond the harm of disclosure itself, as Gerber explains that "disclosure could lead to improper use by Gerber's competitors" (Mot. to Seal at 4), neither the declarations nor the letters in support of the Motion to Seal indicate what such "improper use" might entail. Such generalized concerns are insufficient to overcome the public's strong interest in access to those materials in a case that focuses on the marketing of Gerber's products. *See Allegra*, 2021 WL 4799032, at *5 (defendant "cannot overcome the public's strong interest in disclosure" where declarant "does not provide specific facts or a particularized explanation of how . . . stale [marketing] information could be capitalized on by [defendant's] competitors to harm [defendant] now or in the future" and where the public's interest "is particularly strong here as the [document] contains information about the basis for . . . marketing claims . . . which undeniably go to the heart of this class action lawsuit."); *In re Parmalat*, 258 F.R.D. at 244, 256 (denying protection of marketing strategies where movant failed to make a "specific showing of the economic value" of those marketing strategies); *King*

*Pharms.*, 2010 WL 3924689, at *12 (finding movant did not demonstrate its interest in maintaining confidentiality of marketing information despite its assertions that "it has always maintained these proprietary and sensitive business and marketing documents in confidence" and "if . . . competitors were to gain access to such information, [its] internal strategies regarding how it develops and markets its products could potentially be copied.").[13]

Accordingly, Gerber has not satisfied its burden to overcome the strong presumption in favor of public access to the documents in this category. Gerber's request to seal or redact documents concerning its marketing strategy and consumer research is denied.

E.    Additional Considerations – Prior Sealing and Confidentiality Orders

In addition to the four categories listed above, Gerber notes that the exhibits it seeks to seal or redact have all been designated as "Confidential" or "Attorneys' Eyes Only" under the confidentiality order entered in this case, have previously been filed under seal before this Court, and in certain cases are subject to sealing orders issued by another court in this District and by a court in the Central District of California. (*See* Mot. to Seal at 2; Castello Decl. ¶¶ 3–7; Goldberg Decl. ¶¶ 1, 6; *see also* ECF No. 20 (joint motion for confidentiality order); Order dated 12/07/2015 (granting motion for confidentiality order); ECF No. 66 (motion to file class certification filings under seal); Order dated 8/15/2018 (granting leave to file under seal)); ECF No. 37, *P&L Dev.,*

---

[13] The Court also notes that, in some cases, the cat is out of the bag. For example, information that Gerber seeks to redact from the parties' statements and counterstatements of fact regarding the timing and publication of certain advertisements (*see* ECF No. 200-7 ¶¶ 25–28; ECF No. 200-8 ¶¶ 22–25) is a matter of public record and has already been disclosed and discussed in the Court's memoranda and opinions. (*see* ECF No. 137 at 9–11 (listing publications in which challenged advertisements appeared and the timing of those advertisements)). Gerber "cannot defeat the already heavy presumption in favor of public access with respect to materials that are 'already in the public domain.'" *Alcon Vision*, 2020 WL 3791865, at *7 (quoting *JetBlue Airways*, 960 F. Supp. 2d at 397); *Gambale*, 377 F.3d at 144 ("The genie is out of the bottle . . . . We have not the means to put the genie back."); *King Pharms.*, 2010 WL 3924689, at *10, *12 (noting that "information contained in published advertisements is already public and cannot constitute confidential business information" and finding that technical information "revealed in promotional materials . . . and discussed in opinions issued by [federal courts]" is not entitled to protection).

*LLC v. Gerber Prods. Co.*, No. 21-CV-5382 (MKB) (AYS) (E.D.N.Y. Jan. 10, 2022) (order sealing complaint); ECF No. 295, Order Re. Applications to File Under Seal, *Zakaria v. Gerber Prods. Co.*, No. 2:15-CV-200 (JAK) (C.D. Cal. Aug. 1, 2017).

Though a relevant consideration, the operation of the confidentiality order in this case does not require that the documents at issue be shielded from public access. *See Uni-Sys., LLC v. U.S. Tennis Ass'n, Inc.,* No. 17-CV-147 (KAM) (CLP), 2019 WL 3753780, at *2 (E.D.N.Y. Aug. 8, 2019) (quoting *Johnson v. Fed. Bur. of Prisons*, No. 16-CV-3919 (AMD) (CLP), 2017 WL 5197143, at *3 (E.D.N.Y. Nov. 9, 2017)) ("Although . . . a protective order may provide guidance to the parties regarding what documents it might be appropriate to seal and how such documents should be presented to the Court, the decision to allow documents to be filed under seal in connection with motions and court proceedings is a wholly separate inquiry governed by a different standard than whether to maintain documents disclosed in discovery in confidence."). Indeed, the protective order applies only to discovery documents, which "lie entirely beyond" the presumption of public access. *Valassis*, 2020 WL 2190708, at *1 (quoting *Brown*, 929 F.3d at 49–50, 53); (*see also* ECF No. 20). Now that those documents have been submitted in connection with motions seeking relief from the Court, the strong presumption of public access attaches and the balancing test described above applies. *See Alcon Vision*, 2020 WL 3791865, at *9 (quoting *Brandon v. NPG Recs.*, 19 Civ. 1923 (GHW), 2020 WL 2086008, at *10 (S.D.N.Y. Apr. 30, 2020)) ("Even if material is properly designated as Confidential or Highly Confidential by a protective order governing discovery, that same material might not overcome the presumption of public access once it becomes a public document.").

Further, although Gerber argues that "[d]ozens of exhibits overlap with the parties' sealed class-certification filings," (Mot. to Seal at 2) and "a substantial number of those exhibits reflect

and/or discuss . . . documents that were filed under seal in another action that was pending in the Central District of California" (Goldberg Decl. ¶ 1), it does not specifically identify any documents that overlap with the parties' sealed class certification filings, and identifies only two documents that may be subject to sealing or protective orders in other cases: Plaintiffs' Exhibit 8, a deposition transcript designated as "Highly Confidential" in the *Zakaria* Action, and Plaintiffs' Exhibit 149, a complaint that was filed in an unrelated action in this District, *P&L Dev. LLC v. Gerber Prods. Co.*, 21-CV-5382 (MKB) (AYS) (E.D.N.Y. Sept. 28, 2021). (Castello Decl. ¶¶ 6–7).

With respect to Plaintiffs' Exhibit 8, Gerber indicates that it "reviewed that transcript and identified portions of the transcript where certain information should be redacted. . . . [and] should remain sealed." (Mot. to Seal at 2). However, while the Court has an unredacted copy of the exhibit (*see* ECF No. 182-4 at 143–92), Gerber has not provided a copy of the transcript with its proposed redactions for evaluation (*see* Proposed Pls' Exhibits). Further, while Gerber indicates that the deposition transcript "was subject to a sealing order" (Mot. to Seal at 2), the copy of that order submitted with the Castello Declaration refers to the sealing of other deposition transcripts, but not to the sealing of the deposition transcript at issue here (Castello Decl. at Ex. A). Since the Court cannot evaluate the merits of Defendants' proposed request to redact the transcript without proposed redactions and since Gerber has not demonstrated that Plaintiffs' Exhibit 8 was sealed in another action, Gerber's request to seal or redact that exhibit is denied.

With respect to Plaintiffs' Exhibit 149, Gerber indicates that "portions of the complaint" filed in *P&L Development,* including portions related to pricing information, are "subject to sealed treatment" pursuant to a court order issued by Judge Shields. (Mot. to Seal at 2; *see also* Castello Decl. ¶ 7; *id.* at Ex. B). However, the version of the *P&L* Complaint that was filed as Plaintiffs' Exhibit 149 already reflects those redactions (*see* ECF No. 182-22 at 195–240), and Defendant

proposes no additional redactions such that sealing the document is warranted (*see* Proposed Pls' Exhibits). Accordingly, Gerber's request to seal or redact Plaintiffs' Exhibit 149 is likewise denied.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Seal is denied.

**SO ORDERED.**

/s/ Ramon E. Reyes, Jr.

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: December 5, 2022
Brooklyn, NY