```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  JENNIFER HASEMANN, individually and
  on behalf of all others similarly
  situated,                                    MEMORANDUM & ORDER
                                               15-CV-2995(EK)(RER)
                    Plaintiff,

              -against-

  GERBER PRODUCTS CO.,

                    Defendant.

-------------------------------------x

  WENDY MANEMEIT, individually and on
  behalf of all others similarly
  situated,

                    Plaintiff,
                                               17-CV-0093(EK)(RER)
              -against-

  GERBER PRODUCTS CO.,

                    Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

In this class action, Plaintiffs allege that Gerber engaged in false and deceptive advertising in marketing its Good Start Gentle infant formula. Before the Court is Plaintiffs' motion for an order approving supplemental notice to potential members of the subclasses previously certified in the action. For the reasons set forth below, Plaintiffs' motion is granted.

## I. Background

The Honorable Margo K. Brodie, to whom this action was previously assigned, certified two subclasses in 2019: one for New York purchasers of Good Start Gentle, the other for Florida purchasers. *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 279 (E.D.N.Y. 2019).[1]  The subclasses were defined as follows:

> **The [Florida / New York] Subclass:** All persons who purchased Good Start Gentle infant formula in [Florida / New York] between October 10, 2011, and April 23, 2016.  The [Florida / New York] Subclass excludes the judge or magistrate assigned to this case; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, legal representatives, successors, and assigns; persons who purchased Good Start infant formula for the purpose of resale; and any government or government entity participating in the WIC program.  The term "purchased" does not include formula received by a person via the WIC program.

*Id.*  Soon thereafter, the Court granted Plaintiffs' motion to appoint Angeion Group, LLC as the class-notice provider and approved Plaintiffs' proposed notice program.  Order dated June 27, 2019.[2]  The notice program had two components: (1) a "paid media campaign" consisting of "targeted internet banner notice[s]," and (2) "direct email notice where email addresses are available."  Class Representatives' Mem. of Law in Supp. of

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

[2] Unless otherwise noted, citations to the docket refer to entries on the *Hasemann* docket, No. 15-CV-2995.

2

Unopposed Motion for Class Notice 3, ECF No. 143. About 1,000 such email addresses were available at that point. *Id.* The Court provided a 90-day period for class members to opt out of the class. Long-form Notice, ECF No. 148-2. The initial notice was sent in July 2019. Decl. of Shoshana Savett ¶ 5, ECF No. 145-2.

Plaintiffs now ask the Court to approve supplemental notice to potential class members, at email addresses that Plaintiffs have received, or will soon be receiving, from four retailers. Plaintiffs sent subpoenas to four retailers that sold Good Start Gentle formula — Target, Walmart (through its Sam's Club warehouses), the supermarket conglomerate Ahold, and (most recently) CVS. They indicate that they (or the notice administrator) have received lists of Good Start Gentle purchasers' email addresses for the first three retailers already, and expect to receive a list from CVS soon. Class Representatives' Mem. of Law in Supp. of Mot. for an Order that Provides Suppl. Notice 2, ECF No. 145-1; Pls.' Reply in Further Supp. of Their Mot. for Suppl. Class Not. 4, ECF No. 148.

Plaintiffs request that the Court direct the notice provider to send email notices to the individuals identified in these lists. Gerber opposes the request.

3

## II. Discussion

Federal Rule of Civil Procedure 23(c)(2)(B) requires that "[f]or any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." This requirement is based on due-process considerations; as the Supreme Court has explained, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Together, "the language of Rule 23(c)(2)(B) and the Supreme Court's interpretation of that language and the Due Process Clause . . . make clear that whenever an individual class member's name is known or easily ascertainable, individual notice is mandatory." 3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 8:7 (6th ed.), Westlaw (Dec. 2022 Update). As a leading treatise has observed, "[t]his concept is considered to be settled." *Id.*; *see also* 7AA Charles A. Wright et al., *Federal Practice & Procedure* § 1786 (3d ed.), Westlaw (Apr. 2022 Update) ("[I]t is clearly settled that in Rule

4

23(b)(3) actions all identifiable class members must be given individual notice . . . .").

In this case, the consumers on the lists provided by the four retailers are not merely individuals "who can be identified through reasonable effort"; they are individuals who *have* been identified. Thus, Rule 23 requires the Court to direct individual notice to them.

In opposing such notice, Gerber raises several objections. First, Gerber argues that the retailers' lists may be overbroad. It relies on, among other cases, a district court's holding that "it is not necessary to send individual notice to an overinclusive group of people simply because that group contains some additional class members whose identities are unknown." *Jermyn v. Best Buy Stores, L.P.*, No. 08-CV-0214, 2010 WL 5187746, at *6 (S.D.N.Y. Dec. 6, 2010); *see also Schneider v. Chipotle Mexican Grill, Inc.*, 16-CV-2200, 2019 WL 1512265, at *2 (N.D. Cal. Apr. 8, 2019). Gerber argues that the retailers' lists may be overbroad for three reasons: (1) Plaintiffs requested lists of consumers who "may have" purchased Good Start Gentle, rather than restricting their request to those who actually made such purchases; (2) the lists may include purchases outside the class period; and (3) the lists could include consumers who received Good Start Gentle through the Women, Infants and Children (WIC) program, despite the fact

5

that such purchasers are excluded from the class definition. Def.'s Mem. of Law in Opp'n to Class Reps.' Mot. for an Order that Provides Suppl. Not. ("Gerber Opp'n") 2-5; *see Hasemann*, 331 F.R.D. at 279 (class definition).

These arguments do not undermine the need to send class notice to the identified individuals.  First, Gerber's concern that the lists were responsive to a request for customers who "may have" purchased Good Start Gentle is unfounded.  This request was narrowed, however, during the production process: Plaintiffs submitted email correspondence between Plaintiffs' counsel and counsel for Target, Walmart, and Ahold in which the companies' representatives confirm that they are providing actual purchase data.[3]  Likewise, the Court ordered CVS to provide information only for actual purchases.  *See Hasemann v. CVS Pharmacy Inc.*, No. 19-MC-2518, 2023 WL 1785545, at *2-3 (E.D.N.Y. Feb. 6, 2023).

---

[3] Target's counsel indicated that the data consisted of "individuals whose [sic] purchased Gerber Good Start Gentle infant formula."  Target Email Correspondence 3, ECF No. 148-3.  Walmart's counsel indicated he was providing data from individuals "who purchased this product."  Walmart Email Correspondence 2, ECF No. 148-4.  And Ahold's counsel responded to a request for "only . . . information for individuals who purchased Gerber Good Start Gentle infant formula."  Ahold Email Correspondence 5, ECF No. 148-5.

Indeed, Gerber concedes that Ahold's data explicitly shows, for each purchase record, which product was purchased — at a sufficient level of detail for Gerber to identify a subset of that list as involving purchases of a different product, "Gerber Good Start Gentle for Supplementing."  Gerber Opp'n 3-4.

Moreover, modest overbreadth — even if it were present — would not override the requirement of individual notice. Some amount of overbreadth is permissible in providing class notice. *See, e.g.*, *Victorino v. FCA US LLC*, No. 16-CV-1617, 2020 WL 5064295, at *2 (S.D. Cal. Aug. 27, 2020) ("Notice to a broader group than the class definition is acceptable as long as there is some link or connection between the method of class notice and the class definition."); *Bowerman v. Field Asset Servs., Inc.*, No. 13-CV-0057, 2015 WL 5569061, at *4 (N.D. Cal. Sept. 21, 2015) ("Here, as occasionally occurs, the best notice practicable under the circumstances was notice to a group that was broader than the class definition but included the complete universe of class members. This was an acceptable and unremarkable method of delivering notice to the class."); *Alberton v. Commonwealth Land Title Ins. Co.*, No. CIV.A. 06-3755, 2010 WL 1049581, at *3 (E.D. Pa. Mar. 17, 2010) (rejecting as "without merit" an objection to a proposed class mailing that the recipient group did not "track the contours of the class certified by the Court"). The two cases that Gerber cites involved considerably less-targeted lists that what Plaintiffs have proposed using here. *Jermyn* involved a list of Best Buy customers that the district court described as "random"; indeed, the plaintiffs there had apparently pointed to "no evidence that the list . . . contains the name of even a single class member."

2010 WL 5187746, at *7. And in *Schneider*, the court declined to approve notice based on a list of Chipotle's online purchasers where the class definition was explicitly restricted to in-store diners. 2019 WL 1512265, at *3. For obvious reasons, there was "no link between the list of online purchasers (which includes individuals excluded from the class definition) and class members." *Id.*

Gerber's objection that the lists may be temporally overbroad is also misplaced. Target, Walmart, and Ahold's counsel all confirmed they were producing data that corresponded to the class period. *See* Target Email Correspondence 3; Walmart Email Correspondence 2; Ahold Email Correspondence 5. And this Court previously narrowed the subpoena to CVS to encompass only purchases that occurred during the class period. *See Hasemann*, 2023 WL 1785545, at *3.

Nor does Gerber's argument that the records may include products provided through WIC change the outcome. As discussed, the cases that Gerber cites involved overbreadth far greater than any potential overbreadth here. *See Jermyn*, 2010 WL 5187746, at *7; *Schneider*, 2019 WL 1512265, at *3.

Gerber also argues that none of the data provided by Target or Ahold "were supported by any type of affidavit or declaration from a custodian of records." Gerber Opp'n 2. But Gerber has cited no authority requiring such documentation.

8

Such authentication is typically associated with compliance with Federal Rule of Evidence 803(6), which governs the admissibility of business records under a hearsay exception.  But Gerber has not shown that proof of authenticity is required in the class-notice context.  On the contrary, "courts frequently consider hearsay in deciding whether to issue class notice."  *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755, 2011 WL 317984, at *4 (E.D.N.Y. Feb. 1, 2011) (Mann, M.J.).

Finally, Gerber objects to one retailer — Walmart — having provided its data directly to the notice provider and refusing to make it available for examination by its counsel.  But Gerber has cited no authority for the proposition that it is "entitled to . . . a copy of" Walmart's responses.  Gerber Opp'n 5.  That information contains personally identifying information of formula purchasers, and Gerber has not shown that it needs this information.  At least one district court has approved a notice plan that involved a third parties providing data directly to the notice providers, with no indication that the list needed to be distributed more broadly.  *See Baker v. Sorin Grp. Duetschland GmbH*, No. 1:16-CV-00260, 2018 WL 8188426, at *3 (M.D. Pa. Jan. 2, 2018) (ordering subpoena recipients to "provide the names and addresses of all Class Members directly to the Claims Administrator, Angeion Group").

9

Because this supplemental notice is going to individuals who may not previously have learned about this litigation, the Court is extending the time for class members to opt out by 90 days after the supplemental notices are sent. *See Manual for Complex Litigation, Fourth* § 21.321 (Federal Judicial Center 2004) ("A general extension of time for making the election may be appropriate if logistical or other problems require further mailings or publications."). This extension is motivated primarily out of concern for the recipients of the supplemental notice. However, it would be unwieldy (and involve unnecessary expense) to extend the opt-out period only for consumers on Target, Walmart, Ahold, and CVS's lists (and to verify that any new opt-outs fall within that subset of class members). In the interest of "making Rule 23 workable," *Jermyn*, 2010 WL 5187746, at *3, it makes more sense simply to extend the opt-out period for all class members.

### III.  Conclusion

For these reasons, Plaintiffs' motion for supplemental notice is granted. The time for class members to elect to opt out of the class is extended to 90 days after the notice program goes into effect. Within seven days of this Order, the class-notice provider should send email notice to the email addresses provided by Walmart, Target, Ahold, and CVS (except for those identified in the Ahold records as purchasers only of Gerber

10

Good Start Gentle for Supplementing). These email notices should be sent in the manner previously approved in this case and should contain the same content, except that they should reflect the new opt-out date as set forth above. Plaintiffs are directed to update the class-notice website to reflect the new opt-out deadline. Plaintiffs are also directed to submit a final report from the notice administrator verifying the supplemental notice program's effective implementation, after its completion.

       SO ORDERED.

                                            /s/ Eric Komitee
                                          ERIC KOMITEE
                                          United States District Judge

Dated:    March 14, 2023
            Brooklyn, New York